| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |
| | CASE TYPE: DERIVATIVE |

IN RE NASH FINCH COMPANY )
DERIVATIVE LITIGATION )
)
_____ )
) MEMORANDUM
This Document Relates To: )
) MC 03-000302
ALL ACTIONS )
)
)

COPY

This Memorandum is hereby expressly incorporated by reference to the June 15, 2004 Order issued by this Court.

### INTRODUCTION

Plaintiffs Virginia Butas, Anitole Butas, Michael Peterson, and Louis Daigle, shareholders of Nash Finch Company ("Nash Finch" or the "Company"), brought these three consolidated shareholder derivative actions against two of the Company's officers and its Board of Directors (the "Board"). Plaintiffs claim that the defendants were responsible for Nash Finch allegedly incorrectly accounting for a portion of its vendor promotions, which purportedly caused the Company to incur damages, including damage to its reputation, loss of stock value, and being named as a defendant in several federal securities actions. Defendants moved to dismiss this consolidated action based upon plaintiffs' failure to make a demand on the Board prior to commencing litigation, for failure to state a claim under the Company's liability limitation contained in its Certificate of Incorporation, and because these actions are premature.

For the reasons set forth below, defendants' motion is granted, and the case is hereby dismissed with prejudice.

**Exhibit 9**

## FACTUAL BACKGROUND

The following recitation of facts is drawn from plaintiffs' First Amended Consolidated Complaint ("Amended Complaint") and documents referenced in the Amended Complaint.

Nominal Defendant Nash Finch is a food distribution and retail company located in Edina, Minnesota. Defendants Carole F. Bitter, Jerry L. Ford, Allister P. Graham, John H. Grunewald, Ron Marshall, Robert F. Nash, Laura Stein, John E. Stokely, William R. Voss, William H. Weintraub, and James L. Donald are or were members of the Company's Board. Of these defendants, only Ron Marshall (Nash Finch's CEO) is an employee of the Company, or an "inside" director. All of the other directors are "outside" directors in that they are not Company employees. The final defendant, Robert B. Dimond, is the Company's CFO and is not a director. At the time these actions were commenced, the Board consisted of Bitter, Ford, Graham, Grunewald, Marshall, Nash, Stein, Stokely, Voss and Weintraub. Accordingly, nine of the ten Board members were "outside" directors.

The Plaintiffs claim that from July 2002 through the present (the "Relevant Period"), Defendants caused the Company, by failing to perform their oversight duties, "to manipulate the amount of promotional allowances it claimed it would receive from vendors to understate its costs and overstate its income." On October 9, 2002, the SEC commenced an informal inquiry into the Company's practices relating to "count-recount" charges assessed to the Company's vendors. The Company's Audit Committee also initiated an internal review of the Company's practices and procedures. On November 8, 2002, Nash Finch issued a press release announcing the SEC's informal inquiry, the Company's internal review, and a delay in releasing its 2002 third quarter earnings.

From December 2002 through March 2003, eight class-action lawsuits were filed against the Company in the United States District Court for the District of Minnesota, claiming that the Company misled investors in violation of the federal securities laws in its accounting for "count-recount" promotions. Of the defendants here, only Marshall and Dimond were also named as defendants in the federal action. The consolidated federal actions were dismissed with prejudice on June 21, 2003.

On February 4, 2003, the Company announced that its new auditor, Deloitte and Touche ("Deloitte"), had resigned because the Company was unable to provide Deloitte with sufficient information for it to conclude that the Company's vendor promotion accounting practices were proper. By that time, Nash Finch's stock price had fallen from the Relevant Period high of $28.85 to $4.30 per share.

On May 15, 2003, Nash Finch filed its 2002 Third Quarter 10-Q and its 2002 10-K, which did not contain any restatements relating to "count-recount" accounting. In the 2002 10-K, the Company's independent auditor, Ernst & Young, states that the Company's financial statements are fairly and accurately presented in all material aspects.

On July 24, 2003, plaintiffs filed a Consolidated Complaint. In November 2003, defendants filed a motion to dismiss the Consolidated Complaint based upon the same grounds as the present motion. Plaintiffs both opposed defendants' motion with a brief and filed the Amended Complaint, presumably to correct errors in identifying the members of the Company's Board and to address the demand futility requirements contained in Guttman v. Huang, a recent case applying Delaware law.[1] On February 23, 2004, the Court allowed plaintiffs to file their

---

[1] As noted further below, Delaware law applies to this action.

Amended Complaint, which thereafter became the operative complaint in this consolidated action. In the Amended Complaint, plaintiffs assert claims of breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. The Amended Complaint also contains many of the same factual allegations as the recently dismissed federal securities actions.

Defendants now move this Court to dismiss the Plaintiffs' Amended Complaint on three grounds: (1) failure to make the required demand on the board of directors; (2) failure to state a claim upon which relief can be granted; and (3) that this action is not ripe.

### FAILURE TO MAKE A DEMAND

A shareholder derivative claim is brought "to enforce a *corporate* cause of action." Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90, 95 (1991). A derivative claim belongs to the corporation itself—in this case, Nash Finch—and not to the individual shareholders bringing the claim. Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993); Wessin v. Archives Corp., 592 N.W.2d 460, 464 (Minn. 1999).

Prior to commencing a derivative action on behalf of a corporation, plaintiffs are required to either make a demand upon the board of directors that the corporation commence litigation or allege with particularity why such a demand would have been futile. Minn. R. Civ. P. 23.06. The demand requirement "implements the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors." Kamen, 500 U.S. at 101 (quotations omitted). Demand is not only a procedural requirement but is a substantive right of the corporation, screening against strike suits and giving the corporation an opportunity to resolve shareholder complaints short of litigation, as well as controlling any litigation which does arise. Aronson v. Lewis, 473 A.2d 805, 809 (Del.

4

1984) *overruled on other grounds by* Brem v. Eisner, 746 A.2d 244 (Del. 2000). Here, it is undisputed that plaintiffs did not make such a demand. Instead, Plaintiffs have claimed that making such a demand would have been futile.

To give effect to the critical demand requirement, plaintiffs were required to plead their futility allegations with factual particularity. Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000). While the Court must accept all well-pleaded facts as true and draw all reasonable inferences in plaintiffs' favor, "[c]onclusory allegations are not considered as expressly pleaded facts or factual inferences." White v. Panic, 783 A.2d 543, 549 (Del. 2001). Likewise, "inferences that are not objectively reasonable cannot be drawn in plaintiffs' favor." Beam v. Stewart, 845 A.2d 1040, 1048 (Del. 2004). The pleading burden for demand futility is "more onerous than that required to withstand" an ordinary motion to dismiss. Levine v. Smith, 591 A.2d 194, 207 (Del. 1991) *overruled on other grounds by* Brehm v. Eisner, 746 A.2d 244 (Del. 2000). As such, "notice pleading" is insufficient. Brehm, 746 A.2d at 254.

A. **Legal Standard.**

Because Nash Finch is a Delaware corporation, Delaware substantive law applies. Prof'l Mgmt. Assoc., Inc. v. Coss, 574 N.W.2d 107, 110 (Minn. Ct. App. 1998). However, the parties disagree over which of Delaware's two standards for determining demand futility applies in this case. Plaintiffs argue that the two-pronged test of Aronson v. Lewis applies, and defendants argue that the alternate test announced in Rales v. Blasband applies.[2]

Since its adoption in 1984, Delaware courts have used the two-pronged Aronson test to determine demand futility where board decisions or transactions are challenged in a shareholder

---

[2] In opposing defendants' motion to dismiss the Consolidated Complaint, plaintiffs initially seemed to agree that the test announced in Rales v. Blasband applied to this case. Ultimately, plaintiffs claim that the test announced in Aronson v. Lewis applies.

derivative suit. That test analyzes "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [in the challenged transaction, or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson, 473 A.2d at 814. Notably, both prongs of the Aronson analysis focus "on the substantive nature of the <u>challenged transaction and the board's approval thereof</u>." Rales, 634 A.2d at 933 (emphasis in original).

In 1993, the Delaware Supreme Court recognized that "[n]ot all derivative suits fall into the paradigm addressed by Aronson"—that is, whether a specific challenged transaction of the company's board of directors was so egregious as to overcome the business judgment rule which supplies a presumption of good faith in business decisions taken by a board. Id. Rather, some cases allege that the board of directors failed to do something, such as failed in their oversight of the Company's operations. As the Delaware Supreme Court explained in Rales, "the essential predicate for the Aronson test is the fact that a <u>decision</u> of the board of directors is being challenged" in the derivative suit, and "where there is no conscious decision by directors to act or refrain from acting, the business judgment rule has no application." Id.

Accordingly, the Delaware Supreme Court announced a new standard to determine demand futility where a suit challenges a board of directors' failure to take action and where no specific transaction or decision of the board is being challenged. In those cases, "[the] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales, 634 A.2d at 934. This standard focuses on whether the directors are independent from the proposed litigation itself, not a challenged business transaction. The court in

6

Rales found that, "where directors are sued derivatively because they have failed to do something (such as a failure to oversee subordinates), demand should not be excused automatically in the absence of allegations demonstrating why the board is incapable of considering a demand." Id. at 934 n.9 (emphasis added).

Plaintiffs dispute the applicability of the Rales test in this action because they characterize Nash Finch Board's alleged inaction as conscious inaction, which, plaintiffs argue, makes it an actual decision of the Board and therefore calls for an Aronson analysis. Plaintiffs cite In re Abbott Laboratories Derivative Shareholders Litigation, 325 F.3d 795 (7th Cir. 2003), a Seventh Circuit case applying Delaware law, in which the court applied the Aronson test after finding that the complaint sufficiently alleged that the directors "knew of... violations of law," and "'chose' not to address them in a timely manner." Id. at 806, 809. But, even assuming the Seventh Circuit correctly applied the Aronson test under the circumstances of that case, the allegations in plaintiffs' Amended Complaint do not rise to those in Abbott Labs.[3] Here, plaintiffs do not describe any particularized facts demonstrating such "conscious inaction" of the Board. See id. at 809. Instead, the Amended Complaint is filled with conclusory allegations.

The Court will follow the lead of the Delaware courts and finds that the Rales test is the proper test to apply here. As one Delaware court explained:

> In this case, plaintiff does not challenge a decision of [the Company's] board of directors. Plaintiff alleges that the board failed to prevent [the CEO and Chairman of the Board] from misrepresenting the corporation's financial condition. The complaint also alleges that certain board members signed misleading statements on behalf of the corporation, and that all of the defendants

---

[3] In Abbott Labs, the Board received four formal certified Warning Letters, among other communications, from government enforcement agencies stating that the company's conduct was improper and threatening the company with seizure, injunction and/or civil penalties. Despite these warnings, the Abbott Labs defendants continued their course of business for six years until action was finally taken against them for failure to comply. Abbott Labs, at 799–801.

conspired with [the CEO] to misrepresent the value of the corporation's stock. However, plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings. Therefore, plaintiff must satisfy the one step test announced in Rales to demonstrate that he was excused in making a demand.

Seminaris v. Landa, 662 A.2d 1350, 1353-54 (Del. Ch. 1995). See also Guttman v. Huang, 823 A.2d 492, 499 (Del. Ch. 2003) (finding Rales applied where "plaintiffs allege that the defendant-directors individually breached their fiduciary duties by . . . failing to ensure that [the Company] had in place the financial control systems necessary to ensure compliance with applicable accounting standards"); In re Baxter Int'l Inc. S'holders Litig., 654 A.2d 1268 (Del. Ch. 1995) (same). As discussed below, however, even under the Aronson test, plaintiffs failed adequately to plead demand futility.

**B.    *Rales* Analysis.**

Plaintiffs have alleged that demand on the Board was futile for the reasons as follows:

1.  A majority of the members of the Board participated in or approved of the alleged wrongdoing.

2.  Some of the members are long-time business associates.

3.  The members would be forced to sue themselves.

4.  The members engaged in acts that are incapable of ratification.

5.  The members benefited from the alleged wrongdoing.

6.  The members are exposed to personal liability.

7.  The members would be impaired in defending the federal class actions.

8.  The members would not be covered by insurance.

9.  The members had not yet commenced litigation.

A major theme throughout these reasons is the allegation that a majority of the board failed to prevent, participated in, or approved the alleged wrongdoings and, therefore, demand would have

been futile.[4] Neither this general allegation nor the specific allegations considered later in this opinion state with particularity the reasons for the plaintiffs' failure to make the required demand.

1. **Substantial Likelihood of Liability.**

By naming every member of the Board as a defendant in their derivative action, Defendants have attempted to create a de facto "interest" in the litigation by creating the impression that it is impossible for the Board to have "exercised its independent and disinterested business judgment in responding to [the] demand." Rales, 634 A.2d at 934.

Delaware courts have rejected this approach holding that the "mere threat" of liability in the derivative action does not render a director interested. Rales, 634 A.2d at 936. Plaintiffs must show that the directors individually face a "substantial likelihood" of personal liability to prevent a director from impartially considering a demand. Id. Accordingly, merely suing all of the members of the Board to create personal risk of liability does not excuse demand. In re E.F. Hutton Banking Practices Litig., 634 F. Supp. 265, 270 (S.D.N.Y. 1986).

Plaintiffs have substantially increased their pleading burden by basing their futility claims upon potential liability. Minnesota Rule of Civil Procedure 23.01 requires Plaintiffs to plead their demand futility allegations with particularity. Therefore, plaintiffs must also plead their claim for relief against the directors with particularity because a "substantial likelihood of

---

[4] These general demand futility allegations were also asserted, often word-for-word, by the same plaintiffs' counsel in another recent derivative case filed in this Court. See Arlia v. Olson, MC 03-013887 (Minn. Dist. Ct. Nov. 7, 2003) (McShane, J.). In that case, Judge McShane rejected the same demand futility allegations stated here. Of course, this Court is not bound by that decision.

9

liability" cannot be determined from the face of a complaint unless the entire claim is pled with sufficient particularity to permit the Court to reasonably reach that conclusion. Baxter, 654 A.2d at 1270 (finding that notice pleading does not satisfy the requirement of pleading more than a mere threat of liability in derivative cases).

Additionally, Nash Finch's Certificate of Incorporation exempts its directors from liability for breaches of fiduciary duty except for conduct amounting to a breach of the duty of loyalty, intentional misconduct, or self-dealing (a "non-exempted claim").[5] Therefore, the directors can consider a demand unless particularized allegations in the Amended Complaint establish a substantial likelihood of liability for one of these non-exempted claims—not merely a breach of the duty of care. Guttman, 823 A.2d at 501. For demand to be excused, plaintiffs must allege with factual particularity sufficient facts to allow this Court to find that a majority of the Board members, sitting at the time the first complaint was filed, faced a substantial likelihood of liability for a breach of duty of loyalty, intentional misconduct, or self-dealing which would create a reasonable doubt that they could have exercised independent and disinterested judgment in responding to the required demand. The Amended Complaint does not meet this standard.

2.     **Guttman v. Huang.**

The Delaware Chancery Court's recent decision in Guttman v. Huang is a useful guide. In Guttman, as in this case, plaintiffs alleged that the defendants engaged in a variety of misconduct related to the company's failure to account accurately for and disclose its financial results, and further claimed that defendants made materially misleading statements regarding those disclosures because the disclosures were premised on improper accounting. Guttman, 823 A.2d at 494. The SEC also commenced an investigation of the company's accounting practices,

---

[5] "The Court may take judicial notice of the certificate in deciding a motion to dismiss." Baxter, 654 A.2d at 1270 (citation omitted).

and the company announced that it was conducting an internal review, all of which caused the company's stock price to drop significantly. Id. at 495. A former accounting manager also filed a lawsuit against the company claiming its accounting practices were improper. Id. at 495-96. These events prompted numerous securities lawsuits against company insiders, and the Guttman plaintiffs claimed, as do plaintiffs here, that the defendants' conduct exposed the company to federal securities liability causing the company to incur substantial costs in responding to the suits and to the SEC's investigation and damaged the company's "credibility as an entity." Id. at 496, 498.

The defendants in Guttman were also protected by an exculpatory provision, and the court in Guttman focused on the lack of particularized facts pleading a breach of the duty of loyalty or intentional misconduct. The court in Guttman held that the plaintiffs failed to plead a substantial likelihood of liability—even though the company issued a restatement of its financials and the complaint contained allegations of insider trading, neither of which are present here—and rejected the plaintiffs' demand futility arguments, granting dismissal. Id. at 506.

Plaintiffs here similarly fail to plead facts sufficient to find a substantial likelihood of liability for a breach of duty of loyalty, intentional misconduct, or self-dealing which would create a reasonable doubt that they could have exercised independent and disinterested judgment in responding to the required demand. Plaintiffs attempt to plead these claims by broadly alleging that the defendants' conduct "involves a knowing and culpable violation of their obligations as directors and officers of Nash Finch [and] the absence of good faith on their part." (Compl. ¶ 30.) However, they fail to identify the reasons why particular defendants should have been on notice of the alleged wrongfulness of their actions.

11

The complaint is entirely devoid of particularized allegations of fact demonstrating that any of the outside directors had actual or constructive notice of the alleged improprieties. They fail to plead what facts were known, how they were known, who knew them and when, and why the information should have alerted the defendants to wrongdoing. Plaintiffs even admit that no one—not the SEC, an outside, independent auditor, nor a court of law—has determined that the Company's vendor promotion program or its accounting was wrong, illegal or otherwise improper. Plaintiffs have offered merely conclusory allegations, "empty of the kind of fact pleading that is critical." Id. at 507.

Plaintiffs' attempt at pleading intentional wrongdoing by singling out the Audit Committee members is also unpersuasive. The Amended Complaint merely repeats the Company's publicly disclosed information describing who the various committee members are and their roles and duties, and then concludes that they failed in those duties. However, plaintiffs' allegations also indicate that the Company had significant financial controls, the Audit Committee met twelve times in 2002, the Audit Committee was entirely comprised of outside directors, and the Company had an independent, outside auditor. The court in Guttman stated that such information would indicate that an audit committee properly discharged its duties. Guttman, 823 A.2d. at 507. Accordingly, Plaintiffs' Amended Complaint, like that in Guttman, fails to state a cause of action against the directors for non-exempted breaches of fiduciary duty, and because there exists no "substantial likelihood" of liability against the directors, they remain disinterested and demand is not excused under Rales.

Plaintiffs also acknowledged that they did not seek to review Nash Finch's books and records under 8 Del. C. § 220. Such a review could have provided the basis for pleading the required particularized facts. "They have thus ignored the repeated admonitions of the Delaware

Supreme Court . . . for derivative plaintiffs to proceed deliberately and to use the books and records device to gather the materials necessary to prepare a solid complaint." Guttman, 823 A.2d at 492. Plaintiffs have failed to comply with the level of due diligence suggested in Guttman to review books and records.

3.  **Demand would not be excused under *Aronson*.**

Even if the Aronson test applied, as plaintiffs suggest, demand would still not be excused because plaintiffs fail to articulate particularized facts that overcome the protections of the business judgment rule. The business judgment rule is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Aronson, 473 A.2d at 812. Absent an abuse of discretion, that judgment will be respected by the courts. Id. To overcome that presumption, plaintiffs must allege particularized facts that create a reasonable doubt that the directors are disinterested and independent in the specific challenged transaction, or that the challenged transaction was otherwise the product of a valid exercise of business judgment. Aronson, 473 A.2d at 814.

From the standpoint of interest, directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally. Id. Second, to invoke the business judgment rule's protection, directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them. Having become so informed, they must then act with requisite care in the discharge of their duties. Under the business judgment rule, a failure to act with the "requisite care" is predicated upon concepts of gross negligence. Id.

Because the Aronson analysis focuses "on the substantive nature of the challenged transaction and the board's approval thereof," Rales, 634 A.2d at 933 (emphasis deleted), the first task is to identify the "challenged transaction." According to plaintiffs, the way in which Nash Finch conducted and accounted for its "count-recount" program was wrongful and illegal. Plaintiffs further claim that defendants "failed to thwart [these] improper transactions." (Pls.' Opp'n at 6.) Therefore, the "challenged transaction," according to the plaintiffs, was the conduct of and accounting for Nash Finch's "count-recount" program and defendants' effective "stamp of approval" on those alleged wrongs.

Plaintiffs have alleged no facts to show that the directors were personally interested in the "count-recount" program or its accounting. There are no allegations that any of the board members "appear on both sides of the transaction," for example, that they had financial ties to a vendor or other third party who financially benefited from how the program was functioning or from the Company's accounting treatment. They have alleged no insider trading. Nor have they shown any other type of personal benefit in the Company's approach to the "count-recount" program beyond that conferred upon the corporation or all stockholders generally (*i.e.*, increased profits, dividends, etc.).

Moreover, plaintiffs have alleged no facts to suggest that the Board failed to inform themselves, prior to making a business decision, of all material information reasonably available to them regarding the "count-recount" program. On the contrary, plaintiffs allege that the audit committee met twelve times during the year, reviewed reports, hired independent auditors, and aired disputes with vendors regarding the program. They do not dispute that the Board received an audit opinion from their independent auditors, Ernst & Young, which stated that the Company's financial statements are fairly and accurately presented in all material aspects.

14

Further, Plaintiffs fail to allege facts to allow the Court to infer that, having informed themselves of the facts reasonably available to them, the Board failed to act with the requisite care in the discharge of their duties. Other than conclusory statements that the program and its accounting were "improper," plaintiffs fail to articulate facts known, or which could have been known, to the defendants to alert them to the alleged improprieties—and what steps should have been taken to correct them. Unlike the plaintiffs in Abbott Labs, plaintiffs have failed to allege facts sufficient to create a reasonable doubt that the Nash Finch board failed to act "on an informed basis, in good faith and in the honest belief that the actions taken were in the best interests of the company." Aronson, 473 A.2d at 812. Accordingly, demand is not excused under Aronson.

### 4. Remaining Individual Demand Futility Allegations.

In a final attempt to plead demand futility, Plaintiffs cite a laundry list of additional reasons why the defendant directors would have been unable to properly consider a demand. Just as these reasons are not unique to plaintiff's Amended Complaint, neither is this Court's rejection of them.

#### a. Directors Would Be Forced To Sue Themselves.

Plaintiffs assert demand futility because the defendants "would be forced to sue themselves and persons with whom they have extensive business and personal entanglements." But, this argument is consistently rejected. See Reimel v. MacFarlane, 9 F. Supp. 2d 1062, 1066 (D. Minn. 1998); Lewis v. Curtis, 671 F.2d 779, 785 (3d Cir. 1982) (the "cases are in agreement that the allegation that demand upon the directors would be futile because the directors 'would be suing themselves' is not alone sufficient to excuse demand."), *cert. denied*, 459 U.S. 880 (1982); Brehm, 746 A.2d at 257 n.34. If demand could be avoided by simply bringing claims against a majority of a company's board, derivative action plaintiffs would easily circumvent the demand requirement.

15

### b. Business and Personal Entanglements.

Plaintiffs claim that Marshall has business, professional and personal relationships with Donald and Bitter precluding these defendants from considering a demand to initiate litigation against one another. Donald was not on the Board when these actions were commenced and, therefore, it is irrelevant whether he could consider a demand. As for Marshall and Bitter, Delaware law required plaintiffs to set forth specific factual allegations establishing that the relationships are of a "bias-producing" nature that "border[s] on or even exceed[s] familial loyalty and closeness." Stewart, 845 A.2d at 1050. Plaintiffs allege only that Marshall and Bitter both serve as directors of an entity called Food Marketing Institute. The Amended Complaint contains no facts expounding on the nature of their relationship, nor does it attempt to allege any personal connection between these or any other directors. This is a "structural bias" argument, which has been rejected by the Delaware Supreme Court, and is likewise rejected by this Court. Id. at 1051-52.

### c. Marshall's Position as CEO.

Plaintiffs focus most of their futility allegations on Marshall, the Company's CEO and the only member of the Board who is also an employee of Nash Finch. In general, Plaintiffs claim that Marshall could not consider a demand against the other Board members because his employment and compensation makes him "beholden" to the Board. Under plaintiffs' theory, an inside director would never be able to consider a demand against the other members of a company's board, but they provide no legal support for that proposed inference.

A director can be "beholden" to those that are "in a position to exert considerable influence" over him. Rales, 634 A.2d at 937. However, plaintiffs do not plead any other facts establishing that the Board exerts "considerable influence" over Marshall—such as occurrences that might indicate that Marshall has a history of blindly following the Board's will or even

16

well—upon the advice of counsel . . . conclude it to be unwise" for the Company to pursue claims that would undercut the Company's defense of actions being pursued against the Company. E.F. Hutton, 634 F. Supp. at 269-72. Rather than demonstrating the Board's interest, not commencing an action that would undercut the Company's defenses in another pending lawsuit could as easily indicate an exercise of sound business judgment. See id. Moreover, because the vast majority of the director defendants—ten out of eleven —were not named as defendants in the federal actions, plaintiffs' contention that bringing suit would increase the defendants' personal liability in the federal actions is unfounded.

### f.   Director and Officer Insurance Policy.

Finally, plaintiffs argue that the defendants would not be covered by the Company's insurance policy if they commenced litigation against themselves and, therefore, demand should be excused. Such a rule has been repeatedly rejected because it would "eviscerate the demand requirement" because demand would be excused whenever a corporation purchases standard insurance for its directors—something most corporations do. In re Westinghouse Sec. Litig., 832 F. Supp. 989, 997 (W.D. Pa. 1993); In re Prudential Ins. Co. Derivative Litig., 659 A.2d 961, 972-73 (N.J. Super. Ct. Ch. Div. 1995); Stoner v. Walsh, 772 F. Supp. 790, 805 (S.D.N.Y. 1991).

## FAILURE TO STATE A CLAIM NOT EXEMPTED UNDER NASH FINCH'S EXCULPATORY PROVISION

These derivative claims against the director defendants also must be dismissed because the Amended Complaint fails to state a claim upon which relief can be granted under Minnesota Rule of Civil Procedure 12.02.[6] Nash Finch's Certificate of Incorporation eliminates any

---

[6] To the extent that Plaintiffs' claims are predicated on the alleged fraudulent actions of the defendants, their allegations fail to satisfy the heightened pleading standard of Minnesota Rule of Civil Procedure 9.02, which requires allegations of fraud to be set forth with particularity. However, the Amended Complaint also fails to state a claim under the traditional notice pleading standard.

18

liability for a director's breach of his or her duty of care. (Hansen Aff. Ex. B.) Delaware law enforces such liability limitation clauses, expressly allowing a provision "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages from breach of fiduciary duty as a director." 8 Del. C. § 102(b)(7) (2003). The exemption has limited exceptions that require intentional wrongdoing amounting to a breach of the duty of loyalty. See In re Reliance Sec. Litig., 91 F. Supp. 2d 706, 732 (D. Del. 2000). A breach of loyalty claim "requires some form of self-dealing or misuse of corporate office for personal gain." Id. Therefore, plaintiffs could only avoid dismissal on this separate ground by pleading "circumstances constituting intentional fraud or self dealing." Id.

Plaintiffs' allegations are merely conclusory and are not supported by actual facts sufficient to state a claim for a breach of the duty of loyalty. As discussed in detail earlier in this opinion, the Amended Complaint lacks any facts that, if true, indicate that any of the defendants actively participated in or caused the alleged wrongdoing. And, because no self-dealing is alleged, defendants "lacked any pecuniary motive for deceiving the stockholders intentionally and no other plausible motive has been advanced." Zirn v. VLI Corp., 681 A.2d 1050, 1062 (Del. 1996). Accordingly, defendants' motion to dismiss for failure to state a claim upon which relief can be granted is also granted.

## CONCLUSION

Defendants' motion to dismiss is granted because plaintiffs were not excused from making a prelitigation demand on the Board and failed to state a claim upon which relief can be granted. Because plaintiffs were already given the opportunity to amend their pleadings, this action is dismissed with prejudice.

TNL

19