# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Donald Rensch, derivatively on behalf of Nominal Defendant Northern Oil & Gas, Inc., | Civil No. 10-3679 (SRN/JJK) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Michael L. Reger, James Randall Reger, James Russell Reger, Ryan R. Gilbertson, Weldon W. Gilbertson, James R. Sankovitz, Chad D. Winter, Douglas M. Polinsky, Joseph A. Geraci, II, and Voyager Oil & Gas, Inc., | |
| Defendants, | |
| and, | |
| Northern Oil & Gas, Inc., | |
| Nominal Defendant. | |

---

Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 N. Kierland Blvd., Suite 145, Scottsdale, AZ 85254; and Timothy J. Becker, Zimmerman Reed, PLLP, 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402, for Plaintiff.

Wendy J. Wildung, Faegre & Benson LLP, 2200 Wells Fargo Center, 90 South Seventh St., Minneapolis, MN 55402-3901, for Defendants Michael L. Reger, Ryan R. Gilbertson, James R. Sankovitz, and Chad D. Winter, and Nominal Defendant Northern Oil & Gas, Inc.

Rachna B. Sullivan, and Lousene M. Hoppe, Fredrikson & Byron, P.A., 200 South Sixth St., Suite 4000, Minneapolis, MN 55402-1425, for Defendants James Randall Reger, James Russell Reger, Weldon W. Gilbertson, and Voyager Oil & Gas, Inc.

Catherine H. Ahlin-Halverson, and Richard G. Wilson, Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South Seventh St., Minneapolis, MN 55402, for Defendants Joseph A. Geraci, II, and Douglas M. Polinsky.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the separate motions to dismiss brought by (1) Defendants Northern Oil & Gas, Inc., Michael L. Reger, Ryan R. Gilbertson, James R. Sankovitz, and Chad D. Winter (collectively, "the Northern Oil Defendants" and, with the exception of Northern Oil & Gas, the "Officer Defendants") to dismiss for failure to state a claim and on other grounds (Doc. No. 15); (2) Defendants Joseph A. Geraci, II, and Douglas M. Polinsky to dismiss Count II for failure to state a claim (Doc. No. 26), and (3) Defendants Voyager Oil & Gas, Inc., James Randall Reger, James Russell Reger, and Weldon W. Gilbertson to dismiss Counts II and III for failure to state a claim (Doc. No. 19).  For the reasons stated below, this Court grants all three motions.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Donald Rensch, as a shareholder of Nominal Defendant Northern Oil & Gas, Inc. ("NOG"), filed this shareholder's derivative action against (1) the Northern Oil Defendants, (2) Defendants Joseph A. Geraci, II, and Douglas M. Polinsky, and (3) Defendants Voyager Oil & Gas, Inc., James Randall Reger, James Russell Reger, and Weldon W. Gilbertson ("the Voyager Defendants"), essentially alleging (1) that the individual Defendants usurped a corporate opportunity by forming Plains Energy Investments, Inc., and Defendant Voyager Oil & Gas, Inc., "a direct competitor of NOG," or aided and abetted such usurpation, and (2) that Voyager tortiously interfered with NOG's prospective business relationships.  (Doc. No. 1, ¶ 1.)

NOG, a Minnesota corporation, is in the business of acquiring, developing and

2

exploiting oil and natural gas properties, particularly in the Bakken and Three

Forks/Sanish formations within the Williston Basin, a large basin in eastern Montana and

western North and South Dakota that is estimated to contain substantial energy reserves.

(Id. ¶ 20.)  NOG was formed in 2006 by the following Defendants:  Michael L. Reger

("M. Reger"), NOG's Chairman and CEO; Ryan R. Gilbertson ("R. Gilbertson"), NOG's

President (and a director since March 2007); and Douglas M. Polinsky, and Joseph A.

Geraci, II, two former directors of NOG.  (Id. ¶¶ 9, 20.)

Voyager, a Delaware corporation, is also in the business of energy exploration and

production, focusing primarily on the oil shale resources in Montana and North Dakota.

(Id. ¶ 15, 29, & 30.)  Voyager was formed in April 2010, when Plains Energy

Investments, Inc. merged with another corporation.  Plains Energy was founded in 2008

by Defendants James Randall Reger ("J. Reger"), Weldon W. Gilbertson ("W.

Gilbertson"), and James R. Sankovitz.  (Id., ¶¶ 7, 10 & 11.)  J. Reger then served as the

CEO and a director of Plains Energy, and W. Gilbertson served as Plains Energy's

President until it became Voyager.  (Id. ¶¶ 7, 10.)  J. Reger is also the father of M. Reger,

one of the co-founders of NOG, and W. Gilbertson is also the father of NOG's co-

founder, R. Gilbertson.  (Id. ¶¶ 6, 7, 9, 10.)

M. Reger, NOG's CEO and Chairman, and his wife are affiliated with Reger Gas

Investments, an early investor in Plains Energy and thus a current shareholder of

Voyager.[1]  M. Reger, the son of J. Reger, one of the founders of Plains Energy, is also the

---

[1]        All references to a person's "current" position refer to the date the

continue...

brother of Defendant James Russell Reger ("J.R. Reger"), the CEO of Voyager since December 31, 2009 (as well as a director since April 16, 2010).  (Id. ¶¶ 6-8.)

The individual Defendants include two current officers of NOG.  The first, James R. Sankovitz, is NOG's COO and Secretary since March 2010 as well as its General Counsel since 2008.  (Id. ¶ 11.)  Sankovitz also co-founded Plains Energy and served as its Secretary and General Counsel until April 2010, when Plains Energy merged with ante4, Inc. to form Voyager.  (Id.)  He is also the managing member of a limited liability company that was an early investor in Plains Energy.  (Id.)

The second, Chad D. Winter, has served as NOG's CFO since March 2010 and had served as its Vice President of Operations from 2007 to 2008.  (Id. ¶ 12.)  Winter is also the organizer of a limited liability company that was an early investor in Plains Energy and that now owns shares of Voyager.  (Id.)  Thus the current officers of NOG include M. Reger, R. Gilbertson, Sankovitz and Winter (collectively, "the Officer Defendants").  (Id. ¶ 16.)

The last two individual Defendants are two former directors of NOG.  The first, Douglas M. Polinsky, co-founded NOG and served as a director until May 3, 2007.  (Id. ¶ 13.)  Polinsky is also the president of a corporation that was an early investor in Plains Energy and thus is a current owner of shares of Voyager.  (Id.)

The second, Joseph A. Geraci, II, also was a co-founder of NOG and a director until 2007.  (Id. ¶ 14.)  Geraci is also the managing director of a limited partnership that

---

[1]...continue
derivative Complaint was filed.

4

was an early investor in Plains Energy and thus is a current shareholder of Voyager.  (Id.)

In his three-count Complaint in this shareholder derivative action, Plaintiff alleges, on behalf of NOG, that (1) the Officer Defendants usurped a corporate opportunity of NOG, and thereby breached their fiduciary duties of loyalty to NOG; (2) J. Reger, J.R. Reger, W. Gilbertson, Polinsky and Geraci aided and abetted the Officer Defendants' breaches of their fiduciary duties; and (3) Voyager tortiously interfered with a prospective business relationship of NOG.  (Id. ¶¶ 39-51.)

Various groups of Defendants now bring three separate motions to dismiss.

## II.   DISCUSSION

The Northern Oil Defendants move to dismiss the Complaint for failure to state a claim and for failure to plead the necessary facts showing that demand upon NOG's Board of Directors should be excused.  (Doc. No. 15.)[2]  The Northern Oil Defendants first contend that "Plaintiff's failure to make pre-suit demand cannot be excused because a majority of [NOG's] Board are outside directors," and that "even if the current directors could not fairly consider a demand," Minnesota law permits the Board to appoint a special litigation committee and delegate to it, the decision whether to pursue the claims that Plaintiff presently asserts derivatively.  (Doc. No. 17, at 4 (emphasis in original).)

The Northern Oil Defendants also contend that Plaintiff's Complaint fails to satisfy the pleading standards under Rules 8(a)(2) and 12(b)(6).  (Id. at 17-21.)  They argue that the allegations of the Complaint are too vague and conclusory, such that it is

---

[2]     Although the Northern Oil Defendants seek a dismissal of the entire Complaint, only Count I is directed against them.  (Doc. No. 1, at 16-18.)

"unclear" (1) "exactly what the corporate opportunities were that the Officer Defendants supposedly usurped," (2) "when the usurpation(s) supposedly occurred," and (3) "how the supposed usurpation(s) supposedly harmed Northern Oil."  (Id. at 4.)  They argue both that (1) Plaintiff's allegations are deficient with respect to the contemporaneous-ownership requirement of Rule 23.1(b)(1), that is, that Plaintiff "lacks standing to bring a derivative action based upon claims that occurred before he became a shareholder," and (2) the Complaint "does not plead facts that plausibly support a claim for usurpation of corporate opportunity."  (Id. at 18, 19.)

Defendants Geraci and Polinsky also move to dismiss for failure to state a claim on which relief may be granted. (Doc. No. 26.)[3]  They contend that Plaintiff has failed to plead sufficient facts to support two of the three requisite elements of the aiding-and-abetting claim against them:  (1) that they knew that the Officer Defendants were breaching their fiduciary duties to NOG, and (2) that they provided substantial assistance to the Officer Defendants.  (Doc. No. 28, at 1-2.)

Finally, Defendants Voyager, James Randall Reger, James Russell Reger, and Weldon W. Gilbertson also move to dismiss for failure to state a claim on which relief may be granted.  (Doc. No. 19.)  They seek dismissal of Count II for the same reasons that Geraci and Polinsky contend the claim is deficient.  (Doc. No. 21, at 1-2.)  In

---

[3]        In their motion, they seek a dismissal of "Plaintiff's Complaint in its entirety."  (Id.)  Plaintiff's Complaint, however, seeks recovery from Geraci and Polinsky only in Count II for aiding and abetting the Officer Defendants' alleged usurpation of NOG's business opportunities.  (Doc. No. 1, ¶¶ 45-47.)  In their supporting Memorandum, Geraci and Polinsky thus request only a dismissal of Count II.  (Doc. No. 28, at 1-2.)

addition, Voyager seeks dismissal of Count III, which alleges tortious interference, because Plaintiff has failed to plead any facts stating wrongful conduct.  (Id. at 2.)

Defendants' motions to dismiss reveal a fundamental problem in Plaintiff's allegations, requiring dismissal of the entire Complaint.[4]  "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Thus, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Such plausibility does not require probability of success, "but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability," it fails to meet the requisite plausibility standard.  Id.

The Iqbal Court also described an analytical framework for addressing Rule 12(b)(6) motions.  First, a court should separate and discard legal conclusions from the well-pled facts.  Id. at 1949-50.  (The Court clarified that "bare assertions" or "bald allegations" may be rejected due to their "conclusory nature," "rather than their extravagantly fanciful nature."  Id. at 1951.)  Second, a court should determine whether the well-pleaded facts state a plausible claim for relief.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the

---

[4]     In dismissing the Complaint on certain specified grounds, the Court does not imply that the other grounds for dismissal upon which Defendants rely lack merit. Accordingly, if Plaintiff elects to file a new Complaint, he would be well-advised to consider the other arguments Defendants presently assert.

complaint fails to survive.  Id. at 1950.  For example, where the alleged conduct was consistent with unlawful action, yet was "not only compatible with, but indeed was more likely explained by, lawful" behavior, the conduct does not plausibly suggest a claim on which relief may be granted.  Id. (discussing allegations at issue in Twombly).

### A.      Count I:  Usurpation of Corporate Opportunities

Count I, the main claim of usurpation of a corporate opportunity, is directed at the Officer Defendants, that is, M. Reger, R. Gilbertson, Sankovitz and Winter.  Under Minnesota state law, if a corporate officer or director usurps a corporate opportunity, the officer or director may be held liable to the corporation:

> [O]ne entrusted with the active management of a corporation, such as an officer or director, occupies a fiduciary relationship to the corporation and may not exploit his position as an 'insider' by appropriating to himself a business opportunity properly belonging to the corporation.  If such a business opportunity is usurped for personal gain, it is equally well recognized that the opportunity and any property or profit acquired becomes subject to a constructive trust for the benefit of the corporation.

Miller v. Miller, 222 N.W.2d 71, 78 (Minn. 1974).  And, of course, a corporate fiduciary may be held liable for usurpation where he exploits a corporate opportunity by establishing his own corporation to which he then diverts the opportunity, at least where the fiduciary owns and controls that other corporation.  Id.

Here, Plaintiff alleges a usurpation of NOG's corporate opportunities by Plains Energy and Voyager, Plains Energy's successor by merger with ante4, Inc.  The Complaint asserts that "[t]he opportunities Plains Energy / Voyager has taken to acquire and develop oil and gas properties are opportunities that belonged to NOG, in which

NOG had an interest and expectancy, that NOG was financially able to undertake, and were in NOG's line of business and of practical advantage to NOG."  (Doc. No. 1,  ¶ 41; see id. ¶ 34 (alleging that as a result of such acquisitions, "NOG has been deprived of valuable opportunities to acquire and develop oil and gas properties in the" relevant area); accord id. ¶ 43.)  The Northern Oil Defendants contend that this bare-bones conclusory allegation is insufficient to state a claim for usurpation.  (Doc. No. 17, at 19-20.)

But putting aside the question whether this single allegation regarding the acquisition and development of properties by Plains Energy and/or Voyager is too vague and general to satisfy Iqbal, it is clear that Plaintiff's claims of usurpation do not focus on particular business opportunities of NOG that either Plains Energy or Voyager usurped, that is, the acquisition and development of specific energy-producing properties.  Rather, Plaintiff premises his usurpation claims on the *creation itself* of the allegedly-competing corporations:

- "By participating in the formation, capitalization, and operation of Plains Energy / Voyager, a direct competitor to NOG, without offering the opportunity to NOG or its board of directors, the Officer Defendants usurped corporate opportunities belonging to NOG and thereby breached their fiduciary duty of loyalty to NOG."  (Doc. No. 1, ¶ 32.)

- "By participating in and / or approving the formation, capitalization, and operation of Plains Energy / Voyager, a direct competitor to NOG, without offering the opportunity to NOG or its board of directors, the Officer Defendants usurped corporate opportunities belonging to NOG and thereby breached their fiduciary duty of loyalty to NOG."  (Id. ¶ 42.)

- "[T]he Officer Defendants' action in the formation, capitalization, and operation of Plains Energy / Voyager were a corporate opportunity belonging to NOG."  (Doc. No. 35, at 27.)

- "[The] Officer Defendants breached their fiduciary duties and usurped corporate opportunities belonging to NOG by participating in the formation, capitalization, and operation of Plains Energy/Voyager without offering the opportunity to NOG or its [board]." (Id. at 28.)

Insofar as a plausible claim of usurpation requires that the alleged wrongdoer in fact usurped a business opportunity of another, Plaintiff's theory of liability is problematic from the start as it rests only on the allegation that the Officer Defendants created entities that at most could potentially usurp an opportunity belonging to NOG.  Although Plaintiff makes little effort to differentiate Voyager from Plains Energy,[5] the two corporations must be separated in order to analyze whether the creation of either entity could constitute usurpation of a NOG business opportunity.

### 1.    The Creation of Plains Energy

Plaintiff alleges that the Officer Defendants usurped NOG opportunities simply by establishing Plains Energy as a competitor.  But, of course, in our free enterprise economy, the mere existence of a competitor is not legally wrongful, assuming of course that the entities compete on a level playing field.  United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982) ("Competition is favored in the law.").  Moreover, it is difficult to understand how a usurpation claim may be premised on the mere creation of entities without also establishing that those entities then in fact usurped particular opportunities from the plaintiff corporation.  And even if Plains Energy did in fact acquire energy-producing properties that were in NOG's line of business, the mere fact that one

---

[5]      In addition to conflating the two corporations into a single entity, Plaintiff also confuses the two.  (Doc. No. 35, at 8 ("In 2008, . . . the Officer Defendants knowingly participated in the formation . . . of Voyager.").)

corporation rather than another succeeded in acquiring such a property, by itself, discloses nothing more than its success in the marketplace.

In other words, a usurpation claim requires some wrongful conduct by the alleged usurper. Moreover, the mere fact that corporate officers or directors establish additional businesses related to that of the corporation is not necessarily wrongful. In <u>Miller</u>, a minority shareholder brought a shareholder derivative action on behalf of the family business, Miller Waste Mills, Inc., alleging usurpation of corporate opportunities by his two brothers, Rudolph and Benjamin, who "while in active management of Miller Waste" established, the plaintiff alleged, their own businesses to which they diverted corporate opportunities of Miller Waste. 222 N.W.2d at 72-73.

The defendant brothers had established various corporations in lines of business closely related to that of their family's original business. First, the plaintiff's brothers established "Unit Manufacturing Company," to which Miller Waste transferred certain lines of business. <u>Id.</u> at 74-75. The brothers later transferred Unit's business to Filter Supply Corporation, which they also had established. <u>Id.</u> at 75. And one of the brothers had earlier established Miller-Felpax Company, later incorporated as Miller-Felpax Corporation. <u>Id.</u> at 75-76. Both of the defendant brothers also established Miller Lubricated Company. <u>Id.</u> at 76. One of its products "was in direct competition with Miller Waste's business of selling packing waste." <u>Id.</u> Finally, the brothers established Fiberite Corporation and Melamine Plastics Corporation. <u>Id.</u> at 76.

Nevertheless, the trial court dismissed the plaintiff's complaint, finding that "none

11

of the businesses of defendant corporations was a corporate opportunity of Miller Waste," with one exception.  Id. at 77.  And even with respect to that one exception, the defendants were not liable because "no wrongful diversion was made since the transfers were made or the opportunities seized in good faith and duly ratified by the then officers and shareholders" of Miller Waste.  Id.  The Supreme Court of Minnesota affirmed the dismissal of the shareholder derivative complaint, concluding that "we have no difficulty in affirming the trial court's determination that defendants Rudolph and Benjamin did not wrongfully appropriate to defendant corporations or to themselves any corporate opportunity properly belonging to Miller Waste."  Id. at 82.

In short, the mere creation of separate businesses by corporate officers and directors does not necessarily support a claim for usurpation.  Liability depends on the competitor being in the same line of business, and the *wrongful* diversion of business to the competitor.  But here, even putting aside the issue of the validity of Plaintiff's theory that usurpation may be premised only on the creation of a competing corporation, Plaintiff directs that claim against M. Reger, R. Gilbertson, Sankovitz and Winter.  Three of these Officer Defendants, however, did not establish Plains Energy.  Rather, Plains Energy was co-founded in 2008 by (1) J. Reger (who then served as CEO and a director), (2) W. Gilbertson (who then served as President), and (3) Sankovitz (who then served as Secretary and General Counsel).  Neither J. Reger nor W. Gilbertson were officers or directors of NOG at the time Plains Energy was founded, or since.

Granted, the fourth Officer Defendant, Sankovitz, is now General Counsel to

NOG, and also serves as Secretary and COO.  But he has served as NOG's Secretary and COO only "since March 2010," and served as Plains Energy's Secretary and General Counsel only "until April 2010, when Plains Energy became Voyager."  (Doc. No. 1, ¶ 11.)  Thus, any temporal overlap as an officer of both corporations is de minimus and would not, in any event, support Plaintiff's claim of impropriety in the creation of Plains Energy in 2008.  And although the Complaint alleges that he has served as NOG's General Counsel "since 2008," it also alleges that Plains Energy was founded "in 2008." (Doc. No. 1, ¶ 11.)  But absent more precise dates with respect to both the founding of Plains Energy and Sankovitz assuming the position of NOG's General Counsel, there is no factual basis to conclude that he, while serving in any capacity for NOG, co-founded Plains Energy.  Thus, the Complaint at most alleges that Sankovitz served as NOG's General Counsel while also serving as Plains Energy's General Counsel and Secretary. Such allegations do not support a claim of usurpation.

Granted, the Officer Defendants (M. Reger, R. Gilbertson, Sankovitz and Winter) are alleged to have been "early investors" in Plains Energy.  But in light of <u>Miller</u>–which clarifies that even the officers and controlling shareholders of a corporation may establish and operate their own related businesses without usurping corporate opportunities–it is far from clear how the mere contribution of capital for Plains Energy could render them liable for usurping NOG's business opportunities when Plains Energy was founded and run largely by others.

At a bare minimum, Plaintiff first would have to allege sufficient facts that Plains

Energy was engaged in the same line of business as NOG.  But it is not even clear what particular line of energy business Plains Energy originally pursued.  The Complaint alleges in general fashion that "Voyager, the successor to Plains Energy, . . . is an exploration and production company" with a "primary focus [in] oil shale resource prospects in properties in Montana and North Dakota."  (Doc. No. 1, ¶ 15.)  It further alleges that "Plains Energy was, and its successor Voyage is, a direct competitor to NOG in the acquisition and development of oil and gas properties Montana and North Dakota, particularly in the Williston Basin area that is also NOG's core area of focus."  (Id. ¶ 29.)  But the only allegation addressing the allegedly-usurping corporation's line of business in any factual detail concerns Voyager's business as of April 22, 2010.  (See Doc. No. 1, ¶ 30 (addressing Voyager's April 22, 2010 Form 8-K).)

The only remaining connection between Plains Energy and NOG is one of familial relationships.  J. Reger is the father of M. Reger, and W. Gilbertson is the father of R. Gilbertson.  NOG was "co-founded" in late 2006 by (1) M. Reger (who has served as its CEO and Chairman since March 2007); (2) R. Gilbertson (who has served as a director since March 2007 and President since March 2010); (3) Polinsky (who had served as a director until May 3, 2007); and (4) Geraci (who similarly had served as a director until 2007).  But, of course, with respect to the Regers and Gilbertsons, nothing necessarily prohibits the family members of a corporation's officers and directors from engaging in their own business, even if it is a competitor of the corporation.  Miller, 222 N.W.2d at

76.[6]  And there are no allegations, much less any basis to infer, that these familial

relationships were used improperly or otherwise wrongfully exploited to allow the Officer

Defendants to usurp NOG's unspecified opportunities through Plains Energy.

In sum, insofar as Plaintiff's claim is that the creation of Plains Energy in 2008

was wrongful, the Complaint fails to assert a plausible claim that the Officer Defendants

could be liable for usurpation.  The allegations amount to nothing more than the

innocuous claim that two of NOG's current directors (M. Reger and R. Gilbertson), two

of its current officers (Sankovitz and Winter), and two former directors (Polinsky and

Geraci) were early investors in Plains Energy, that Sankovitz and relatives of two current

directors (M. Reger's father and R. Gilbertson's father) created Plains Energy, and that

the brother of one of the current directors currently serves as CEO and a director of

Voyager.

Here, as in <u>Bell Atlantic v. Twombly</u>, the allegations as currently pled establish

only conduct entirely consistent with lawful "free-market behavior."  <u>Iqbal</u>, 129 S. Ct. at

---

[6]      Count I, alleging usurpation, is *not* directed at Polinsky or Geraci, even
though the Complaint alleges that each–like the Officer Defendants to which Count I is
directed–was an "early investor" in Plains Energy.  (Doc. No. 1, ¶¶ 12, 13, & 14.)
Granted, Polinsky and Geraci's positions as directors of NOG each ended in 2007, before
Plains Energy was established sometime in 2008, but it remains unclear why being an
investor in Plains Energy is then relevant to the Officer Defendants' alleged liability.
Similarly, Plaintiff alleges that Winter and Sankovitz, two of the Officer Defendants,
were the head of entities that were "early investors" in Plains Energy, and that each is
currently serving as an officer at NOG.  But if the mere creation of Plains Energy in 2008
and of Voyager in April 2010 by NOG officers or directors is the alleged basis for the
usurpation claim, it is not clear why being a *current* officer of NOG, as opposed to being
such an officer when either of the allegedly-usurping entities was established, is the
apparent basis for liability under Count I.

1950 (discussing <u>Twombly</u>).  And because the relationship between the Officer

Defendants and Plains Energy is more attenuated than that between the defendant

brothers and their own corporations in <u>Miller</u>, the Officer Defendants conduct is "not only

compatible with, but indeed . . . more likely explained by, lawful, unchoreographed free-

market behavior."  <u>Id.</u>  The allegations simply do not permit any plausible inference of

wrongful usurpation premised on the mere creation of Plains Energy.

**2.      The Creation of Voyager**

Plaintiff's usurpation claim with respect to Voyager is even more attenuated than

that regarding Plains Energy.  Although the Complaint often lumps Voyager and Plains

Energy together, Plaintiff's current argument in defense of his Complaint seems to focus

solely on Voyager:

- "[A]ll of Voyager's actions are by definition improper because the only reason Voyager exists is because of the Officer Defendants' breach of fiduciary duties."  (Doc. No. 36, at 5.)

- "Voyager interferes with NOG by its very existence, which in itself is wrongful."  (Doc. No. 36, at 6.)

- "Defendants' argument that the only assistance given to the Officer Directors [sic] was the 'act of starting a legal business' entirely misses the point.  The act of forming Voyager without first offering that opportunity to NOG or its Board was a breach of the Officer Directors' [sic] fiduciary duties."  (Doc. No. 36, at 16.)

- "Defendants' argument that Plaintiff has not show[n] that 'Voyager's actions were improper' mischaracterizes Plaintiff's well-pled allegations.  The Complaint alleges that ***all*** of Voyager's actions are by definition improper because the only reason Voyager exists is because of the Officer Defendants' breach of fiduciary duties."  (Doc. No. 36, at 18 (emphasis in original).)

16

- "In sum, Voyager interferes with NOG by its very existence, which was improper to begin with."  (Doc. No. 36, at 18.)

Insofar as Plaintiff alleges usurpation with respect to the creation of Voyager, his claim is even less plausible because although certain NOG officers had invested in Plains Energy in 2008, there are no allegations that they had any role in creating Voyager in April 2010.  Voyager is not simply a new name for Plains Energy.  Voyager is the product of a merger of Plains Energy with another corporation.  And although Voyager would presumably be liable as a successor to Plains Energy for whatever legal obligations Plains Energy previously had incurred, the principle of successor liability does not mean either that Voyager was created by the same people that founded Plains Energy, or that Voyager continued in the exact line of business as its predecessors.  And the Complaint does not allege in any detail whether Voyager's particular line of business maintained that of Plains Energy or deviated from it.  The Complaint does allege in some detail that Voyager, as of April 22, 2010, is in the business of exploring for, and producing, crude oil and natural gas primarily in Montana and North Dakota.  (Doc. No. 1, ¶ 30.)  Thus, compared to his allegations regarding Plains Energy's line of business, Plaintiff has made a greater showing that Voyager's business was similar to, if not identical with, NOG's business.[7]

---

[7]       But even so, Voyager might be a specialized niche player in the overall gas and oil business:  "'We believe our competitive advantage will be our ability to continue to acquire leases directly from the mineral owners through 'organic leasing.'  Organic leasing allows Voyager to acquire acreage on more favorable terms than our competitors.'"  (Id.)  Thus, it remains unclear that Voyager is in fact a direct competitor of NOG, such that it could even be in a position to usurp NOG's business opportunities.

But, in any event, the Court need not rely on that element of a usurpation claim. Voyager was not created until April 16, 2010, as the result of the merger of Plains Energy and ante4, Inc.  But there are no allegations regarding the circumstances of that merger. Most importantly, there are no allegations regarding who precipitated or is otherwise responsible for that merger.  The Officer Defendants may not be held liable for usurping NOG's opportunities through the creation of Voyager when it is unclear who created Voyager.

It is clear from the Complaint, however, that the creation of Voyager from the merger of Plains Energy and ante4, Inc., was accompanied by significant changes in the leadership of Voyager.  On April 16, 2010, the day of the merger, J. Reger left his positions as CEO and a director of Plains Energy, W. Gilbertson left his position as President, and Sankovitz left his positions as Secretary and General Counsel.  Thus, the familial relationships on which Plaintiff relies in the attempt to connect the Officer Defendants to Plains Energy do not apply with respect to Voyager.

In addition, although the Officer Defendants owned shares of Plains Energy (either directly or through their positions at entities that owned the shares), the merger resulted in a reduction of their relative holdings in Voyager.  For example, although the Complaint alleges that M. Reger held 20.01% of Plains Energy's stock as of March 10, 2009, the merger reduced his holdings in the resulting successor corporation to only 1.73% of the shares of Voyager.

The only connection the Complaint discloses between Voyager and NOG (or its

officers and directors) is the allegation that J.R. Reger, the brother of M. Reger and the son of J. Reger, has been CEO of Voyager since December 31, 2009 and a director since April 16, 2010.[8]  But again, familial connections by themselves do not support any claim of wrongful usurpation and J.R. Reger apparently has never held any position at NOG. The present allegations do not support any plausible claim that the Officer Defendants, by their alleged "creation" of Voyager or otherwise, usurped NOG's business opportunities.

### 3.      Conclusion

In sum, the Complaint fails to support any plausible claim that the Officer Defendants usurped a business opportunity of NOG.  Plaintiff's theory of liability–that the Officer Defendants breached their fiduciary duty simply by establishing either Plains Energy or Voyager–ignores the crucial element of a usurpation claim–that they in fact wrongfully diverted particular opportunities to either Plains Energy or Voyager.  There simply are no non-conclusory allegations that any NOG officer or director wrongfully steered to either Plains Energy or Voyager the opportunity to acquire particular energy-producing properties that would have benefitted NOG.

But even if the Court puts aside that omission, Plaintiff's claim that the Officer Defendants breached their fiduciary duties simply by creating Plains Energy or Voyager also fails to allege any actionable wrongdoing.  First, although the Officer Defendants allegedly invested in Plains Energy, only Sankovitz participated in founding Plains Energy.  Such investments and the familial connections between two of the Officer

---

[8]      It is not clear, however, how someone can be an officer of a corporation before it was created.

Defendants and the other two co-founders of Plains Energy do not support a plausible claim of usurpation of an NOG business opportunity through Plains Energy.  This is particularly true where, as here, the Complaint lacks any detailed non-conclusory allegations that Plains Energy was in fact a direct competitor of NOG, and that Plains Energy then in fact wrongfully acquired particular properties that NOG otherwise would have acquired.

With respect to Voyager, although the Complaint might allege sufficient facts that Voyager is engaged in gas and oil exploration in the same areas in which NOG operates, Plaintiff's claim remains that the mere creation of Voyager constitutes usurpation by the Officer Defendants.  But those Defendants had even less of a role, if any, in the creation of Voyager than they did in the creation of Plains Energy.  In fact, it is entirely unclear who merged Plains Energy and ante4, Inc. to create Voyager or why.

### B.  Count II:  Aiding and Abetting the Officer Defendants

Both of the remaining groups of Defendants move to dismiss Count II, which alleges that certain defendants aided and abetted the Officer Defendants usurpation of NOG's corporate opportunities.  A claim for aiding and abetting has three basic elements: (1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff, (2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty, and (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach.  Witzman v. Lehrman, Lehrman & Flom, 601 N.W.2d 179, 187 (Minn. 1999).  Thus, absent a viable claim for the underlying wrongful action, there

can be no liability for aiding and abetting such action.  Here, the Court has concluded that the Complaint does not sufficiently connect the dots from Plaintiff's allegations that the Officer Defendants breached their fiduciary duties by creating Plains Energy and / or Voyager to any usurpation of NOG's business opportunities.  Accordingly, on the basis of the current allegations, there can be no claim for aiding and abetting any such usurpation.

### C.    Count III:  NOG's Prospective Business Relationships

In Count III, Plaintiff alleges that Voyager tortiously interfered with NOG's prospective business relationships by "intentionally, and willfully, acquir[ing] and develop[ing] oil and gas properties pursuant to opportunities that belonged to NOG." (Doc. No. 1, ¶ 49.)  The tort of intentional interference with prospective contractual relations imposes liability for the resulting pecuniary loss on "[o]ne who intentionally and *improperly* interferes with another's prospective contractual relation," if the "interference consists of" either

> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

> (b) preventing the other from acquiring or continuing the prospective relation.

United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632-33 (Minn. 1982) (quoting Restatement (Second) of Torts § 766B) (emphasis added).

Here, Plaintiff's interference claim is apparently confined to the second form of interference, that is, the allegation that Plains Energy and / or Voyager prevented NOG from acquiring rights in energy-producing properties or from continuing to exploit

existing rights in such properties.  But again, Voyager could only be liable if its

interference with NOG's business prospects was *improper*.  Plaintiff's claim is that

Voyager (and before it Plains Energy) was established to operate as a direct competitor of

NOG.  But as with Count I, "[c]ompetition is favored in the law."  Id. at 633.

Accordingly, liability under Count III would require that Voyager did not just beat out

NOG in the market for energy-producing properties, but obtained rights in such properties

to NOG's detriment through some wrongful conduct.  But there are no allegations in the

Complaint that Voyager, whether through the conduct of its own officers, directors,

employees or agents, or as the vehicle through which the Officer Defendants allegedly

diverted NOG's opportunities to Voyager, engaged in any improper actions in obtaining

rights to energy-producing properties that, absent such improper conduct, would have

been acquired by NOG.[9]

### D.   Dismissal and Amendment

Finally, Plaintiff requests that he should be granted leave to amend his complaint if

---

[9]    Plaintiff relies on Cyberoptics Corp. v. Yamaha Motor Co., Ltd. for the
proposition that the "competitor's privilege" is a defense that "is unavoidably fact-
dependent," such that its application should not be determined on a Rule 12(b)(6) motion
to dismiss.  (Doc. No. 36, at 18 (citing Cyberoptics Corp. v. Yamaha Motor Co., Ltd.,
1996 WL 673161 (D. Minn. July 29, 1996)).)  But Cyberoptics also recognized that such
issues may be resolved, where appropriate, as a matter of law.  1996 WL 673161, at *20.
Here, the issue is not one of disputed fact, but rather the legal sufficiency of the
pleading–that is, whether Plaintiff's allegations state a plausible claim for tortious
interference.  And in any event, *improper* interference is an element of that claim, rather
than a defense to it.  See Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1506-07 (8th Cir.
1992) (clarifying that plaintiff "had the burden of introducing evidence to prove that
[defendant's] conduct was beyond the scope of the competitor's privilege").  Here, the
Complaint discloses no such impropriety.

this Court grants any of the motions to dismiss.  (Doc. No. 35, at 31 n.7; <u>see</u> Doc. No. 36, at 19 n.4.)  The Northern Oil Defendants oppose the request, contending that Plaintiff has not moved for leave to amend and has not shown how amendment would cure the deficiencies of the present Complaint.  (Doc. No 37, at 13.)  But a dismissal of the Complaint under Rule 12(b)(6) for failure to state a claim is usually without prejudice to the plaintiff's right to replead.  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357, at 733-39 (3d ed. 2004) (noting that courts "normally will give the plaintiff leave to file an amended complaint to see if the shortcoming of the original document can be corrected"–"even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading"–and that "leave to amend should be refused only if it appears to a certainty that the plaintiff cannot state a claim").  If Plaintiff elects to draft a new complaint, it must be filed within thirty days of the date of this Order.

## III.    CONCLUSION

Plaintiff's Complaint fails to allege sufficient facts to support plausible claims of usurpation of corporate opportunities, aiding and abetting such usurpation, and tortious interference with prospective business relations.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    The Northern Oil Defendants' motion to dismiss [Doc. No. 15] is **GRANTED**;

2.      Defendants Geraci and Polinsky's motion to dismiss [Doc. No. 26] is

**GRANTED**;

3.      The Voyager Defendants' motion to dismiss [Doc. No. 19] is **GRANTED**;

and

4.      The Complaint is **DISMISSED WITHOUT PREJUDICE**.


Dated:   June 20, 2011                          ___ s/ Susan Richard Nelson ___
                                                SUSAN RICHARD NELSON
                                                United States District Judge