## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| DONALD RENSCH, Derivatively on Behalf of Nominal Defendant NORTHERN OIL & GAS, INC. | ) ) ) ) | Case No. 10-cv-3679-SRN-JJK |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MICHAEL L. REGER, RYAN R. GILBERTSON, JAMES R. SANKOVITZ, and VOYAGER OIL & GAS, INC., | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | **JURY TRIAL DEMANDED** |
| NORTHERN OIL & GAS, INC., | ) ) | |
| Nominal Defendant. | ) ) | |

## VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Donald Rensch ("Plaintiff"), by the undersigned attorneys, submits this Verified Amended Shareholder Derivative Complaint ("Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action derivatively for the benefit of nominal defendant Northern Oil & Gas, Inc. ("NOG" or the "Company") against certain officers and directors of NOG, and Voyager Oil & Gas, Inc. ("Voyager"), as successor to Plains Energy Investments, Inc. ("Plains Energy"), seeking to remedy defendants' breaches of fiduciary duties, usurpation of corporate assets, and aiding and abetting thereof, in connection with the formation, capitalization, and operation of Plains Energy.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

3.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

4.     Plaintiff Donald Rensch, a citizen of Utah, is a shareholder of nominal defendant NOG, was a shareholder of NOG at the time of the wrongdoing alleged herein, and has been a shareholder of NOG continuously since that time.

5.     Nominal defendant NOG is a Minnesota corporation with its principal executive offices located at 315 Manitoba Avenue, Suite 200, Wayzata, Minnesota 55391. NOG is an oil and gas exploration and production company involved in hydrocarbon production, and has focused its activities primarily on projects based in the Bakken and Three Forks/Sanish formations within the Williston Basin, which is located in Montana, North Dakota and South Dakota.

6.     Defendant Michael L. Reger ("M. Reger"), a citizen of the State of Minnesota, co-founded NOG in late 2006 and has served as the Company's Chief Executive Officer

("CEO") and Chairman of the Board of Directors since March 2007.  M. Reger and his wife
Brittany L. Reger ("B. Reger") are affiliated with Reger Gas Investments, LLC ("Reger Gas"),
an early investor in Plains Energy, the predecessor to Voyager.  The registered office address of
Reger Gas is NOG's address, and B. Reger is the managing member of Reger Gas.  As of March
10, 2009, Reger Gas owned 1,120,000 shares of Plains Energy common stock, which represented
20.01% of Plains Energy's then-outstanding common stock.  As of September 30, 2010, Reger
Gas owned 785,729 shares of Voyager common stock, which represented 1.73% of Voyager's
then-outstanding common stock.  In connection with Voyager, on September 22, 2010, M. Reger
subscribed for a $1,000,000 senior secured promissory note, which was sold to certain accredited
investors in a private placement.

7.    Defendant Ryan R. Gilbertson ("R. Gilbertson"), a citizen of the State of
Minnesota, co-founded NOG in late 2006 and has served as the Company's President since
March 2010 and as a director since March 2007.  R. Gilbertson previously served as the
Company's Chief Financial Officer ("CFO") from its inception until March 2010.  R. Gilbertson
is affiliated with Crystal Bay Capital Consulting ("Crystal Bay"), an early investor in Plains
Energy, and is the chief manager of Wayzata Energy Capital, LLC ("Wayzata Energy"), another
early investor in Plains Energy.  As of March 10, 2009, R. Gilbertson personally owned 415,000
shares of Plains Energy common stock, which represented 7.4% of Plains Energy's then-
outstanding common stock, and Crystal Bay owned an additional 650,000 shares of Plains
Energy common stock, which represented an additional 11.6% of Plains Energy's then-
outstanding common stock.  As of September 30, 2010, Wayzata Energy owned 471,457 shares
of Voyager common stock, which represented 1.04% of Voyager's then-outstanding common
stock.

8.    Defendant James R. Sankovitz ("Sankovitz"), a citizen of the State of Minnesota, has served as the Company's Chief Operating Officer ("COO") and Secretary since March 2010. He has also served as the Company's General Counsel since March 2008. Sankovitz co-founded Plains Energy on April 18, 2008 and served as Plains Energy's Secretary and General Counsel until April 16, 2010, when Plains Energy became Voyager. Sankovitz is the managing member of 1242 Investments, LLC ("1242 Investments"), an early investor in Plains Energy. As of March 10, 2009, Sankovitz owned 100,000 shares of Plains Energy common stock, which represented 1.79% of Plains Energy's then-outstanding common stock. As of September 30, 2010, 1242 Investments owned 448,076 shares of Voyager common stock.

9.    Defendant Voyager, the successor to Plains Energy, is a Delaware corporation with its principal executive offices located at 2718 Montana Avenue, Suite 220, Billings, Montana 59101. Voyager is an oil and gas exploration and production company involved in hydrocarbon production, and its primary focus is oil shale resource prospects in properties in Montana and North Dakota.

10.    Collectively, defendants M. Reger, R. Gilbertson and Sankovitz are referred to herein as the "Officer Defendants."

11.    The Officer Defendants and Voyager are referred to herein as the "Defendants."

## DUTIES OF THE OFFICER DEFENDANTS

12.    By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Officer Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Officer Defendants were and are

required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

13.     To discharge their duties, the Officer Defendants, as officers and/or directors of the Company, were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the Officer Defendants were required to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company, and refrain from usurping corporate opportunities belonging to the Company.

## FACTUAL ALLEGATIONS

### Background of NOG

14.     NOG was founded in late 2006 by NOG's Chairman and CEO M. Reger, NOG's President R. Gilbertson, and former NOG directors Douglas M. Polinsky and Joseph A. Geraci, II.  According to its public filings, the Company engages in the acquisition, exploration, exploitation and development of oil and natural gas properties in the Rocky Mountain Region of the United States, specifically focusing on developing wells in Montana and North Dakota.  The majority of the Company's projects are in the Bakken and Three Forks/Sanish formations within the Williston Basin, a large intracratonic sedimentary basin in eastern Montana, western North and South Dakota, and southern Saskatchewan.  The Company states that its "corporate strategy is to build shareholder value through the development and acquisition of crude oil and natural gas assets that exhibit economically producible hydrocarbons."

15.     The Officer Defendants knew, and have always known, that the Company's primary business is in Montana and North Dakota, specifically the Williston Basin area.  This is confirmed by numerous public statements by the Company.

16.   In the Company's Form 10-K filed with the SEC on March 31, 2008, ("2008 10-K"), the Company states:

> Our primary assets are located in the Williston Basin and as of December 31, 2007, include three principal positions—namely:
>
> ▪  Approximately 21,354 net acres located in Sheridan County, Montana, representing a stacked pay prospect;
>
> ▪  Approximately 13,000 net acres located in Mountrail County North Dakota, within and surrounding to the north and south the Parshall Field currently being developed by EOG Resources to target the Bakken Shale; and
>
> ▪  Approximately 7,500 net acres located in Burke and Divide Counties of North Dakota, in which we are targeting the Winnepegosis Shale using acreage in close proximity to a recent Continental Resources Discovery in the formation
>
> These properties target the same Bakken Shale resource formation. We believe the Bakken formation represents one of the most oil rich, exciting plays in the Continental United States. The North Dakota Geological Survey currently estimates the reserves in the Bakken formation to be 300 billion barrels, of which approximately 50% is thought to be currently recoverable, making it one of the largest resource plays in the Continental United States. We possess three-dimensional (3-D) seismic data covering our acreage in Montana and North Dakota, which we hope to utilize to effectively target the most effective well locations on our acreage to most efficiently develop our properties. We commenced drilling on the Bakken properties in late 2007.

17.   The 2008 Form 10-K further states, "In 2008, we intend to continue drilling efforts on our existing acreage covering an aggregate of 62,000 net mineral acres in Mountrail County, North Dakota and Sheridan County, Montana, and to commence drilling or participate in at least 40 new wells."

18.   In the Company's Form 10-K filed with the SEC on March 16, 2009, the Company states:

> Our business focus is on the oil and gas industry in a limited number of properties, initially in Montana and North Dakota. Larger companies have the ability to manage their risk by diversification. However, we will lack diversification, in terms of both the nature and geographic scope of our

business.  As a result, we will likely be impacted more acutely by factors affecting our industry or the regions in which we operate than we would if our business were more diversified, enhancing our risk profile.  If we cannot diversify our operations, our financial condition and results of operations could deteriorate.

19.    In the Company's Form 10-K filed with the SEC on March 8, 2010 ("2010 Form 10-K"), the Company states that "[a]ll of our proved reserves are located in North Dakota and Montana."  The 2010 Form 10-K further states:

The Company will continue to focus on projects in the oil and gas industry primarily based in the Rocky Mountains and specifically the Williston Basin Bakken Shale formation. The Company has begun to develop its substantial leasehold in the Bakken play and will continue to do so as well as target additional opportunities in emerging plays utilizing its first mover leasing advantage.

20.    In the Company's Form 10-K filed with the SEC on March 4, 2011, the Company states:

At year-end, we had developed approximately 15% of our Bakken and Three Forks prospective acreage.  At year end we had 10,748 net acres under the bit, for a total of approximately 31,974 net acres or 23% of our prospective Bakken and Three Forks position which consisted of both developed acreage and net acres under the bit.  The value of our reserves is calculated by determining the present value of estimated future revenues to be generated from the production of our proved reserves, net of estimated lease operating expenses, production taxes and future development costs. All of our proved reserves are located in North Dakota and Montana.

* * *

During 2010, we continued to focus our operations on acquiring leaseholds and drilling exploratory and developmental wells in the Williston Basin. We acquired an aggregate of 56,858 additional net mineral acres during 2010, for an average cost of $1,043 per net acre, primarily in Billings, Burke, Divide, Dunn, Golden Valley, McKenzie, Mountrail, Williams, and Stark Counties, of North Dakota but also in Richland, and Roosevelt of Montana. During 2010, we participated in the completion of 170 gross wells with a 100% success rate in the Bakken and Three Forks formations. As of December 31, 2010, our principal assets included approximately 145,220 net acres located in the Williston Basin region of the northern United States.

21.    Thus, there is no question that the Officer Defendants have always been acutely aware that the Company's primary business is in Montana and North Dakota.   Consequently, the Officer Defendants knew that any company that also focused on developing oil and gas exploration properties in Montana and North Dakota, particularly in the Williston Basin area, would be a direct competitor to NOG.

## Sankovitz Usurped NOG's Corporate Opportunities

22.    On April 18, 2008, Sankovitz, then NOG's General Counsel, with the knowledge of M. Reger and R. Gilbertson, co-founded and formed Plains Energy with James Randall Reger ("J. Reger") and Weldon W. Gilbertson ("W. Gilbertson"), the fathers of M. Reger and R. Gilbertson, respectively.

23.    Sankovitz served as Plains Energy's Secretary and General Counsel from April 18, 2008 until April 16, 2010, and during that period personally directed and approved all of Plains Energy's business activities, including, but not limited to, all of Plains Energy's acquisitions of properties and interests in properties.   During that entire period Sankovitz also served as NOG's General Counsel.

24.    Plains Energy was at all times, and its successor Voyager is now, a direct competitor to NOG in the acquisition and development of oil and gas exploration opportunities in Montana and North Dakota, particularly in the Williston Basin area that is also NOG's core area of focus.

25.    According to Plains Energy's Private Placement Memorandum dated March 10, 2009 (the "PPM"), Plains Energy was "formed for the purpose of providing capital investments for acreage acquisitions and working interests in existing or planned hydrocarbon production ... our business is expected initially to focus on a limited number of properties in Montana."

26.     According to the PPM, as of March 10, 2009, Plains Energy had focused on two separate areas: the Tiger Ridge area, a large gas field located in north-central Montana; and the Heath Shale, an oil drilling area in Petroleum County, Montana.

27.     According to the PPM, as of March 10, 2009, Plains Energy had acquired control of "approximately 50,000 net acres in two separate prospect areas. The leases we control have a minimum term of five years and many have extensions effectively giving us control of lands for up to ten years." As Plains Energy's Secretary and General Counsel, Sankovitz personally directed and approved these acquisitions.

28.     According to the PPM, as of March 10, 2009, Plains Energy was a party to a "joint venture with Hancock Resources [that] is pursuing oil and natural gas exploration opportunities" in the Tiger Ridge area. As Plains Energy's Secretary and General Counsel, Sankovitz personally directed and approved Plains Energy's joint venture with Hancock Resources and its acquisition and development of oil and natural gas exploration opportunities.

29.     According to the PPM, with regard to the Heath Shale:

> [Plains Energy is] currently acquiring acreage very aggressively both within and outside our Hancock Joint Venture at what we believe to be highly attractive prices. We hope to build our position in the Heath to 100,000 acres by the end of 2009. Based on the initial EOG well characteristics, we believe a position of such size would have the potential to produce over 75 million barrels of oil. This play is at a very early and exciting stage and we have the potential to acquire a substantial leasehold position before significant competition materializes.

As Plains Energy's Secretary and General Counsel, Sankovitz personally directed and approved these acquisitions.

30.     In connection with drilling in the Bakken, located in the Williston Basin area, the PPM states:

> Assuming the successful completion of the Offering, [Plains Energy] intends to commit approximately $1.5 million to the development drilling of Bakken wells in the core area of production. We believe our

management will be able to identify leaseholds unable to meet their drilling commitments and willing to assign their interests in acreage that is either subject to drilling or soon to be drilled. By taking advantage of distressed situations, we believe we will be able to immediately provide working interest capital by assuming existing leasehold interests. We expect that we would be committing capital to known drilling situations where our management is able to essentially buy reserves in the ground for $5-$8 per barrel. We expect that well payout will be targeted for approximately one year from completion of each well, providing a quick turn on capital and what we believe will be a long lived cash flow stream.

31.     On April 16, 2010, Plains Energy merged with ante4, Inc., a company with no operations, through a maneuver known as a "reverse merger", in which an active business merges into a dormant shell corporation that is registered for public trading.   As a result of the reverse merger, ante4 changed its name to Voyager, and Voyager continued the same business operations of Plains Energy.  According to Voyager's Form 10-Q filed with the SEC on May 19, 2010 (the "May 19, 2010 10-Q"):

> On April 16, 2010, [Voyager], Plains Energy Acquisition, Inc. ("Acquisition Sub") and Plains Energy Investments, Inc. ("the Target Company") entered into an Agreement and Plan of Merger (the "Merger Agreement").  Under the Merger Agreement, Acquisition Sub merged with and into the Target Company, *with the Target Company remaining as the surviving corporation* and a wholly-owned subsidiary of the Company (the "Merger").   *On the Closing Date, [Voyager] filed a Certificate of Amendment with the State of Delaware to change its name from ante4, Inc. to Voyager Oil & Gas, Inc.*  Going forward, [Voyager] will be a holding company parent of the Target Company, and *[Voyager's] business operations following the Merger will be those of the Target Company.*

> (Emphasis added).

32.     According to the May 19, 2010 10-Q, Voyager was "formed for the purpose of providing capital investments for acreage acquisitions and working interests in existing or planned hydrocarbon production," which is identical to the purpose of Plains Energy as detailed in the PPM.

33.     Affirming that Plains Energy and Voyager engage in the same or substantially similar business activities, the May 19, 2010 10-Q further states that Voyager was "currently engaged in a top-leasing program in targeted areas of the Williston Basin," and:

> As of May 18, 2010 we currently control approximately 112,000 net acres in the following four primary prospect areas:
>
> - 21,000 net acres targeting the Bakken formation in North Dakota and Montana;
>
> - 640 net acres targeting the Red River formation based on 3-D seismic data in Montana;
>
> - 57,000 net acres in our joint venture targeting the Tiger Ridge gas field in Blaine, Hill and Chouteau Counties of Montana; and
>
> - 33,500 net acres in our joint venture targeting the Heath Shale formation in Musselshell, Petroleum, Garfield and Fergus Counties of Montana.
>
> 4,000 of the 21,000 net acres we currently control in the Bakken formation of North Dakota and Montana are under contract and we expect to close in July of 2010.  The leases we control have a minimum term of three years and many have extensions effectively giving us control of lands for up to ten years.

34.     Plains Energy acquired all or substantially all of the above properties, interests and assets, and conducted its top-leasing program, between April 18, 2008, when Plains Energy was founded, and April 16, 2010, when Plains Energy merged with ante4 and changed its name to Voyager.  During that period, Sankovitz, as Plains Energy's Secretary and General Counsel, personally directed and approved all of Plains Energy's acquisitions and business activities.

35.     At all times since April 18, 2008, NOG has been in the same line of business as Plains Energy and Voyager, i.e., obtaining "acreage acquisitions and working interests in existing or planned hydrocarbon production" in the same geographic area as Plains Energy.

36.     At the time he was personally directing and approving Plains Energy's acquisitions and business activities as Plains Energy's Secretary and General Counsel, Sankovitz was also serving as NOG's General Counsel.

37.     From April 18, 2008 through April 16, 2010, Sankovitz, as an officer of NOG, had a fiduciary duty to, but did not, offer to NOG's Board of Directors (the "Board") the opportunities to acquire the properties and interests that Plains Energy acquired and to pursue the "oil and natural gas exploration opportunities" that Plains Energy pursued, including, but not limited to, those set forth in paragraphs 27-30 and 33 above. All of those opportunities were corporate opportunities that belonged to NOG, and Sankovitz usurped them and breached his fiduciary duty of loyalty by taking those opportunities for himself and Plains Energy without first offering them to the Board of NOG.

### M. Reger and R. Gilbertson Aided and Abetted Sankovitz's Usurpation of NOG's Corporate Opportunities

38.     From April 18, 2008 through March 10, 2009, Sankovitz invested substantial sums in the equity of Plains Energy. As of March 10, 2009, Sankovitz owned 100,000 shares of Plains Energy common stock, which represented 1.79% of Plains Energy's then-outstanding common stock.

39.     From April 18, 2008 through March 10, 2009, M. Reger invested substantial sums in the equity of Plains Energy. M. Reger and his wife B. Reger are affiliated with Reger Gas, and as of March 10, 2009, Reger Gas owned 1,120,000 shares of Plains Energy common stock, which represented 20.01% of Plains Energy's then-outstanding common stock.

40.     From April 18, 2008 through March 10, 2009, R. Gilbertson invested substantial sums in the equity of Plains Energy. R. Gilbertson is affiliated with Crystal Bay, and as of March 10, 2009, R. Gilbertson personally owned 415,000 shares of Plains Energy common stock, which represented 7.4% of Plains Energy's then-outstanding common stock, and Crystal

Bay owned an additional 650,000 shares of Plains Energy common stock, which represented an additional 11.6% of Plains Energy's then-outstanding common stock.

41.     As significant investors in Plains Energy, which was founded by their fellow NOG officer Sankovitz and their fathers J. Reger and W. Gilbertson, respectively, M. Reger and R. Gilbertson clearly knew what business activities Plains Energy was founded to engage in, what business activities it had engaged in, what business activities it was then-presently engaging in, and what business activities it planned to engage in going forward.  M. Reger and R. Gilbertson thus knew that Plains Energy was founded to engage in, had engaged in, was engaging in, and planned to engage in business activities that were the same as or substantially similar to NOG's business activities.

42.     As directors of NOG, M. Reger and R. Gilbertson knew that Sankovitz had not presented to the Board of NOG the opportunities to acquire the properties and interests that Plains Energy acquired and to pursue the "oil and natural gas exploration opportunities" that Plains Energy pursued, including, but not limited to, those set forth in paragraphs 27-30 and 33 above.  Thus, M. Reger and R. Gilbertson knew that Sankovitz was usurping NOG's corporate opportunities and breaching his fiduciary duty of loyalty by taking those opportunities for himself and Plains Energy without first offering them to the Board of NOG.

43.     M. Reger and R. Gilbertson materially assisted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties by contributing substantial capital to Plains Energy for use in pursuing those opportunities and by concealing Sankovitz's improper activities from the rest of NOG's Board.  M. Reger and R. Gilbertson therefore aided and abetted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties.

## Plains Energy Aided and Abetted Sankovitz's
## Usurpation of NOG's Corporate Opportunities

44.　　Sankovitz's knowledge of his usurpation of NOG's corporate opportunities and breaches of fiduciary duties is attributable to Plains Energy, for which Sankovitz served as co-founder, Secretary and General Counsel, and whose business activities Sankovitz personally directed and approved.

45.　　From April 18, 2008 through April 16, 2010, Plains Energy, at the direction and with the approval of Sankovitz, materially assisted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties by acquiring the properties and interests that Plains Energy acquired and pursuing the "oil and natural gas exploration opportunities" that Plains Energy pursued, including, but not limited to, those set forth in paragraphs 27-30 and 33 above.  Plains Energy therefore aided and abetted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties.

### Sankovitz, M. Reger, and R. Gilbertson Usurped NOG's Corporate Opportunities

46.　　From April 18, 2008 through April 16, 2010, Sankovitz, as an officer of NOG, was obligated to, but did not, offer to NOG's Board the opportunity for NOG to invest in the equity of Plains Energy.

47.　　Sankovitz did, however, offer to M. Reger and R. Gilbertson, the sons of Sankovitz's Plains Energy co-founders J. Reger and W. Gilbertson, the opportunity to invest in the equity of Plains Energy, and M. Reger and R. Gilbertson both invested substantial sums in the equity of Plains Energy, as set forth in paragraphs 6-7 and 39-40 above.

48.　　At the time they each invested in the equity of Plains Energy, Sankovitz, M. Reger, and R. Gilbertson were all officers of NOG, and therefore they all had a duty to present that investment opportunity to the board of NOG.  They failed to do so, and took that investment

opportunity for themselves.   Therefore, Sankovitz, M. Reger, and R. Gilbertson usurped a corporate opportunity belonging to NOG and breached their fiduciary duty of loyalty.

49.     As a direct and proximate result of the Officer Defendants' foregoing misconduct, NOG has been deprived of development and acreage opportunities in the Williston Basin area and elsewhere and has been deprived of the opportunity to invest in Plains Energy, all of which were corporate opportunities that belonged to NOG.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

50.     Plaintiff brings this action derivatively in the right and for the benefit of NOG to redress breaches of fiduciary duties.

51.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

52.     As a result of the facts set forth herein, Plaintiff has not made any demand on NOG's board of directors to institute this action against the Defendants.   Such demand would be a futile and useless act because the board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

53.     At the time this action was commenced, NOG's board of directors consisted of seven directors, Defendants M. Reger and R. Gilbertson and five additional directors:  Loren J. O'Toole ("O'Toole"), Jack E. King ("J. King"), Carter Stewart, Robert Grabb and Lisa Meier. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action for the following reasons:

        a.      Defendant M. Reger, because he and his wife B. Reger are early investors in Plains Energy, and therefore M. Reger is directly interested in the misconduct complained of herein; and because M. Reger is substantially likely to be held liable both for breaching his own fiduciary duty of loyalty by usurping NOG's corporate opportunities and for aiding and abetting Sankovitz's breaches of fiduciary duties and usurpation of NOG's corporate opportunities;

-15-

b.  Defendant R. Gilbertson, because he is as an early investor in Plains Energy, and therefore R. Gilbertson is directly interested in the misconduct complained of herein; and because R. Gilbertson is substantially likely to be held liable both for breaching his own fiduciary duty of loyalty by usurping NOG's corporate opportunities and for aiding and abetting Sankovitz's breaches of fiduciary duties and usurpation of NOG's corporate opportunities;

c.  O'Toole, because of his close familial and business relationship with his son Loren J. O'Toole, II, ("O'Toole II"), who serves as a director of Voyager, and O'Toole's business relationships with close relatives and associates of M. Reger. O'Toole and his son O'Toole II founded and are the sole partners in the law firm of O'Toole and O'Toole, which actively practices law in the oil and gas industry and generates a material amount of its revenue from clients that are family members and business associates of M. Reger, including but not limited to, (i) Montana Oil & Gas Properties Inc. ("MOP"), a private oil and gas exploration and development company principally owned by Steven Reger and Tom Ryan, uncles of M. Reger; and (ii) Summerfield Baldridge, another partner of MOP;

d.  J. King, because for 27 years he has been an employee of Hancock Resources, an oil and gas exploration and development company that is a major joint venture partner with Voyager and also employs J. King's brother Dale King ("D. King"). According to the PPM, Plains Energy "initially committed approximately $1,000,000 to exploit perceived opportunities in the Tiger Ridge gas field in a joint venture with Hancock Resources of Montana" and "plan[ned] to initially commit a minimum of $2,000,000 to exploit perceived opportunities in the Tiger Ridge gas field in north-central Montana, as well as the growing Heath Shale Oil play in the same general vicinity, in a joint venture with Hancock Resources of Montana." The PPM further states that "[c]ertain of our founders have enjoyed long-standing business and personal relationships with key managers at Hancock Resources," including, upon information and belief, J. King and his brother D. King. The PPM further states that "[o]ur relationship with Hancock Resources has empowered their in-house geologist/geophysicist, Dale King, to select and approve potential areas of leasing based on his geologic knowledge of the area. The joint venture with Hancock Resources is pursuing oil and natural gas exploration opportunities based upon Mr. [D.] King's recommendations."

## COUNT I

### Against the Officer Defendants for Breach of Fiduciary Duty of Loyalty/ Usurpation of Corporate Opportunities

54.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

55.     As alleged in detail herein, each of the Officer Defendants owed to NOG the fiduciary duty of loyalty, pursuant to which they were required to, among other things, refrain from usurping corporate opportunities belonging to NOG.

56.     Sankovitz breached his fiduciary duty of loyalty and usurped NOG's corporate opportunities by taking for himself and Plains Energy, without first offering them to the Board of NOG, the opportunities to acquire the properties and interests that Plains Energy acquired and to pursue the "oil and natural gas exploration opportunities" that Plains Energy pursued, including, but not limited to, those set forth in paragraphs 27-30 and 33 above, all of which were corporate opportunities that belonged to NOG.

57.     Sankovitz further breached his fiduciary duty of loyalty and usurped NOG's corporate opportunities by taking for himself, without first offering it to the Board of NOG, the opportunity to invest in the equity of Plains Energy, which was a corporate opportunity that belonged to NOG.

58.     M. Reger and R. Gilbertson breached their fiduciary duty of loyalty and usurped NOG's corporate opportunities by taking for themselves, without first offering it to the Board of NOG, the opportunity to invest in the equity of Plains Energy, which was a corporate opportunity that belonged to NOG.

59.     As a direct and proximate result of the Officer Defendants' breaches of fiduciary duties and usurpation of corporate opportunities, NOG has been deprived of development and acreage opportunities in the Williston Basin area and elsewhere and has been deprived of the

opportunity to invest in Plains Energy, all of which were corporate opportunities that belonged to NOG.

## COUNT II

### Against Defendants M. Reger and R. Gilbertson for Aiding and Abetting Sankovitz's Breaches of Fiduciary Duties

60.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

61.    As directors of NOG, M. Reger and R. Gilbertson knew that Sankovitz had not presented to the Board of NOG the opportunities to acquire the properties and interests that Plains Energy acquired and to pursue the "oil and natural gas exploration opportunities" that Plains Energy pursued, including, but not limited to, those set forth in paragraphs 27-30 and 33 above. Thus, M. Reger and R. Gilbertson knew that Sankovitz was usurping NOG's corporate opportunities and breaching his fiduciary duty of loyalty by taking those opportunities for himself and Plains Energy without first offering them to the Board of NOG.

62.    M. Reger and R. Gilbertson materially assisted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties by contributing substantial capital to Plains Energy for use in pursuing those opportunities and by concealing Sankovitz's improper activities from the rest of NOG's Board. M. Reger and R. Gilbertson therefore aided and abetted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties.

63.    As a direct and proximate result of Sankovitz's breaches of fiduciary duties and usurpation of corporate opportunities, aided and abetted by M. Reger and R. Gilbertson, NOG has been deprived of development and acreage opportunities in the Williston Basin area and elsewhere, all of which were corporate opportunities that belonged to NOG.

## COUNT III

### Against Defendant Voyager, as Successor to Plains Energy, for Aiding and Abetting Sankovitz's Breaches of Fiduciary Duties

64.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

65.     Sankovitz's knowledge of his usurpation of NOG's corporate opportunities and breaches of fiduciary duties is attributable to Plains Energy, for which Sankovitz served as co-founder, Secretary and General Counsel, and whose business activities Sankovitz personally directed and approved.

66.     From April 18, 2008 through April 16, 2010, Plains Energy, at the direction and with the approval of Sankovitz, materially assisted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties by acquiring the properties and interests that Plains Energy acquired and pursuing the "oil and natural gas exploration opportunities" that Plains Energy pursued, including, but not limited to, those set forth in paragraphs 27-30 and 33 above.  Plains Energy therefore aided and abetted Sankovitz's usurpation of NOG's corporate opportunities and breaches of fiduciary duties.

67.     As a direct and proximate result of Sankovitz's breaches of fiduciary duties and usurpation of corporate opportunities, aided and abetted by Plains Energy, NOG has been deprived of development and acreage opportunities in the Williston Basin area and elsewhere, all of which were corporate opportunities that belonged to NOG.

68.     Voyager, as successor to Plains Energy, is liable for Plains Energy's aiding and abetting of Sankovitz's breaches of fiduciary duties and usurpation of corporate opportunities.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding the Company the amount of damages sustained by the Company as a result of Defendants' misconduct;

B.      Granting appropriate equitable relief to remedy Defendants' misconduct;

C.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.      Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: July 20, 2011                      Respectfully submitted,

                                          ZIMMERMAN REED, PLLP

                                          /s/ Hart L. Robinovitch
                                          Hart L. Robinovitch, MN Bar No. 240515
                                          14646 N. Kierland Blvd., Suite 145
                                          Scottsdale, AZ 85254
                                          Telephone: (480) 348-6400
                                          Fax: (480) 348-6415
                                          E-mail: Hart.Robinovitch@zimmreed.com

                                          KESSLER TOPAZ MELTZER & CHECK, LLP
                                          Eric L. Zagar
                                          Ligaya Hernandez
                                          280 King of Prussia Road
                                          Radnor, PA  19087
                                          Telephone: (610) 667-7706
                                          Fax: (610) 667-7056

                                          *Attorneys for Plaintiff*

## VERIFICATION

I, Donald Rensch, hereby verify that I have authorized the filing of the attached Verified Amended Shareholder Derivative Complaint, that I have reviewed the Amended Complaint, and that the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 7/16/2011

Donald Rensch