UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Donald Rensch, derivatively on behalf of Nominal Defendant Northern Oil & Gas, Inc., | Civil No. 10-3679 (SRN/JJK) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Michael L. Reger, Ryan R. Gilbertson, James R. Sankovitz, and Voyager Oil & Gas, Inc., | |
| Defendants, | |
| and, | |
| Northern Oil & Gas, Inc., | |
| Nominal Defendant. | |

Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 N. Kierland Blvd., Suite 145, Scottsdale, AZ 85254; and Eric L. Zagar, and Ligaya T. Hernandez, Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, PA 19087, for Plaintiff.

Wendy J. Wildung, Faegre & Benson LLP, 2200 Wells Fargo Center, 90 South Seventh St., Minneapolis, MN 55402-3901, for Defendants Michael L. Reger, Ryan R. Gilbertson, James R. Sankovitz, and Nominal Defendant Northern Oil & Gas, Inc.

Rachna B. Sullivan, and Lousene M. Hoppe, Fredrikson & Byron, P.A., 200 South Sixth St., Suite 4000, Minneapolis, MN 55402-1425, for Defendant Voyager Oil & Gas, Inc.

SUSAN RICHARD NELSON, United States District Judge

     This matter is before the Court on the separate motions to dismiss brought by (1) Defendants Northern Oil & Gas, Inc., Michael L. Reger, Ryan R. Gilbertson, and James R. Sankovitz (collectively, "the Northern Oil Defendants" and, with the exception of

Northern Oil & Gas, the "Officer Defendants") to dismiss for failure to state a claim and on other grounds (Doc. No. 52); and (2) Defendant Voyager Oil & Gas, Inc., to dismiss Count III for failure to state a claim (Doc. No. 49). For the reasons stated below, this Court grants both motions and dismisses this action.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Donald Rensch, as a shareholder of Nominal Defendant Northern Oil & Gas, Inc. ("NOG"), originally filed this shareholder's derivative action against (1) the Northern Oil Defendants and another former Defendant, Chad D. Winter, (2) former Defendants Joseph A. Geraci, II, and Douglas M. Polinsky, and (3) Voyager Oil & Gas, Inc., and former Defendants James Randall Reger, James Russell Reger, and Weldon W. Gilbertson ("the Voyager Defendants"), essentially alleging (1) that the individual Defendants either usurped a corporate opportunity by forming Plains Energy Investments, Inc., and its successor Voyager Oil & Gas, Inc., each an alleged "direct competitor of NOG," or aided and abetted such usurpation; and (2) that Voyager tortiously interfered with NOG's prospective business relationships. (Doc. No. 1, ¶ 1.)

NOG, a Minnesota corporation, is in the business of acquiring, developing and exploiting oil and natural gas properties, particularly in the Bakken and Three Forks/Sanish formations within the Williston Basin, a large basin in eastern Montana and western North and South Dakota that is estimated to contain substantial energy reserves. (Id. ¶ 20.) NOG was formed in 2006 by the following Defendants and former Defendants: Michael L. Reger ("M. Reger"), NOG's Chairman and CEO; Ryan R.

Gilbertson ("R. Gilbertson"), NOG's President (and a director since March 2007); and Douglas M. Polinsky, and Joseph A. Geraci, II, two former directors of NOG. (Id. ¶¶ 9, 20.)

Voyager, a Delaware corporation, is also in the business of energy exploration and production, focusing primarily on the oil shale resources in Montana and North Dakota. (Id. ¶ 15, 29, & 30.) Voyager was formed in April 2010, when Plains Energy Investments, Inc. merged with another corporation. Plains Energy was founded in 2008 by Defendant James R. Sankovitz, and by former Defendants James Randall Reger ("J. Reger"), and Weldon W. Gilbertson ("W. Gilbertson"). (Id., ¶¶ 7, 10 & 11.) J. Reger then served as the CEO and a director of Plains Energy, and W. Gilbertson served as Plains Energy's President until it became Voyager. (Id. ¶¶ 7, 10.) J. Reger is also the father of M. Reger, one of the co-founders of NOG, and W. Gilbertson is also the father of NOG's co-founder, R. Gilbertson. (Id. ¶¶ 6, 7, 9, 10.)

M. Reger, NOG's CEO and Chairman, and his wife are affiliated with Reger Gas Investments, an early investor in Plains Energy and thus a current shareholder of Voyager.[1] M. Reger, the son of J. Reger, one of the founders of Plains Energy, is also the brother of Defendant James Russell Reger ("J.R. Reger"), the CEO of Voyager since December 31, 2009 (as well as a director since April 16, 2010). (Id. ¶¶ 6-8.)

The original individual Defendants also included two current officers of NOG. The first, James R. Sankovitz, is NOG's COO and Secretary since March 2010 as well as

---

[1] All references to a person's "current" position refer to the date the original derivative Complaint was filed.

its General Counsel since 2008. (Id. ¶ 11.) Sankovitz also co-founded Plains Energy and served as its Secretary and General Counsel until April 2010, when Plains Energy merged with ante4, Inc. to form Voyager. (Id.) He is also the managing member of a limited liability company that was an early investor in Plains Energy. (Id.)[2] Thus the officers of NOG when the original Complaint was filed included M. Reger, R. Gilbertson, Sankovitz and Winter. (Id. ¶ 16.)[3]

In his three-count Complaint in this shareholder derivative action, Plaintiff originally alleged, on behalf of NOG, that (1) the Officer Defendants (then also including Winter) usurped a corporate opportunity of NOG, and thereby breached their fiduciary duties of loyalty to NOG; (2) J. Reger, J.R. Reger, W. Gilbertson, Polinsky and Geraci aided and abetted the Officer Defendants' breaches of their fiduciary duties; and (3) Voyager tortiously interfered with a prospective business relationship of NOG. (Id. ¶¶ 39-51.)

Various groups of Defendants then brought three separate motions to dismiss. (Doc. Nos. 15, 19 & 26.) This Court granted all three motions and dismissed the

---

[2] The second officer of NOG, former Defendant Chad D. Winter, has served as NOG's CFO since March 2010 and had served as its Vice President of Operations from 2007 to 2008. (Id. ¶ 12.) Winter is also the organizer of a limited liability company that was an early investor in Plains Energy and that now owns shares of Voyager. (Id.)

[3] The last two original individual Defendants were two former directors of NOG. The first, Douglas M. Polinsky, co-founded NOG and served as a director until May 3, 2007. (Id. ¶ 13.) Polinsky is also the president of a corporation that was an early investor in Plains Energy and thus is a current owner of shares of Voyager. (Id.) The second, Joseph A. Geraci, II, also was a co-founder of NOG and a director until 2007. (Id. ¶ 14.) Geraci is also the managing director of a limited partnership that was an early investor in Plains Energy and thus is a current shareholder of Voyager. (Id.)

Complaint without prejudice, explaining that a fundamental problem precluded relief on the essential claim of usurpation of a corporate opportunity, on which the other claims depended. (Doc. No. 44.)

Plaintiff then filed a Verified Amended Shareholder Derivative Complaint (the "Amended Complaint"). (Doc. No. 46.) With respect to the main claim of usurpation, Plaintiff refocused his Complaint to now allege that Sankovitz–during the period from April 18, 2008 until April 16, 2010, when he served both as NOG's General Counsel as well as Plains Energy's General Counsel and Secretary–usurped corporate opportunities of NOG (1) by participating in the formation of Plains Energy (along with the fathers of Defendants M. Reger and R. Gilbertson), and (2) by directing and approving Plains Energy's business activities of acquiring properties for energy production. (Doc. No. 46, ¶¶ 22, 23.) The usurpation claim is also directed at R. Gilbertson and M. Reger.

In addition, Plaintiff dropped several individual Defendants, and modified the aiding and abetting claim so as to be directed at R. Gilbertson and M. Reger (rather than five other former individual Defendants), claiming that they assisted Sankovitz's alleged usurpation. Finally, Plaintiff also dropped the tortious interference claim against Voyager, replacing it with a claim that Voyager itself, as successor to Plains Energy, also aided and abetted Sankovitz's breach of fiduciary duties. (Doc. No. 46.)

By separate motions, the Northern Oil Defendants as well as Voyager now move to dismiss.

## II.   DISCUSSION

The Northern Oil Defendants move to dismiss the Complaint for failure to state a claim, for failure to plead the necessary facts showing that demand upon NOG's Board of Directors should be excused, and for failure to plead facts showing Plaintiff's standing as a shareholder.  (Doc. No. 52.)  The Northern Oil Defendants first contend that Plaintiff's Complaint fails to satisfy the pleading standards under Rules 8(a)(2) and 12(b)(6).  (Doc. No. 53, at 4.)  The Northern Oil Defendants also argue that "Plaintiff failed to make pre-suit demand upon NOG's directors, or to plead facts showing that demand should be excused."  (Id. at 4.)  Finally, the Northern Oil Defendants assert that Plaintiff has failed to plead facts showing that he was a NOG shareholder at the time of the transactions he complains about, and that he has continuously owned NOG stock until the present.  (Id. at 5.)  Defendant Voyager moves to dismiss Count III, which alleges that Voyager aided and abetted Sankovitz's alleged usurpation, for failure to state a claim on which relief may be granted.  (Doc. No. 49.)  Voyager contends that Plaintiff has failed to plead facts establishing three essential elements of that claim.  (Doc. No. 51, at 1.)

But the Court need not decide most of these issues, because Plaintiff's allegations, even after amendment, suffer from a fundamental deficiency, now requiring dismissal of the action.  As the Northern Oil Defendants contend, "[n]ot only does the Amended Complaint fail to plead facts showing that a corporate opportunity of NOG was actually usurped by Plains Energy, it fails to plead facts showing that any of NOG's fiduciaries acted wrongfully."  (Doc. No. 53, at 13.)

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[4] Thus, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Such plausibility does not require probability of success, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability," it fails to meet the requisite plausibility standard. Id.

The Iqbal Court provided an analytical framework for addressing Rule 12(b)(6) motions. First, a court should separate and discard legal conclusions from the well-pled facts. Id. at 678-79. (The Court clarified that "bare assertions" or "bald allegations" may be rejected due to their "conclusory nature," "rather than their extravagantly fanciful nature." Id. at 681.) Second, a court should determine whether the well-pleaded facts state a plausible claim for relief. Id. at 679. "[W]here the well-pleaded facts do not

---

[4] Plaintiff appears to argue that the Rule 12(b)(6) pleading requirements of Twombly and Iqbal do not apply here in this diversity action. (Doc. No. 62, at 31 (stating that he "need only satisfy the requirements of" Rule 8's "short and plain statement" standard "because Plaintiff seeks relief under state law").) But the Federal Rules of Civil Procedure, and federal law interpreting and applying those rules, govern in every action in federal court regardless of the source of the law governing the substantive claims. Even where a complaint is filed originally in state court, but then removed, that complaint must satisfy the current federal pleading standard as defined by the U.S. Supreme Court's decisions in Twombly and Iqbal. See Willy v. Coastal Corp., 503 U.S. 131, 134-35 (1992) (noting that under Rule 81(c), the federal rules "'apply to civil actions removed . . . from the state courts and govern procedure after removal'"). See generally 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3738 (4th ed. 2009) (noting settled rule that removed actions "will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters").

permit the court to infer more than the mere possibility of misconduct," the complaint fails to survive.  Id.  For example, where the alleged conduct was consistent with unlawful action, yet was "not only compatible with, but indeed was more likely explained by, lawful" behavior, the conduct does not plausibly suggest a claim on which relief may be granted.  Id. at 679-80 (discussing allegations at issue in Twombly).

Count I, the main claim of usurpation of a corporate opportunity, and upon which the other claims of aiding and abetting depend, is directed at the Officer Defendants, that is, Sankovitz, M. Reger, and R. Gilbertson.  Under Minnesota state law, if a corporate officer or director usurps a corporate opportunity, the officer or director may be held liable to the corporation:

> [O]ne entrusted with the active management of a corporation, such as an officer or director, occupies a fiduciary relationship to the corporation and may not exploit his position as an 'insider' by appropriating to himself a business opportunity properly belonging to the corporation.  If such a business opportunity is usurped for personal gain, it is equally well recognized that the opportunity and any property or profit acquired becomes subject to a constructive trust for the benefit of the corporation.

Miller v. Miller, 222 N.W.2d 71, 78 (Minn. 1974).  And, of course, a corporate fiduciary may be held liable for usurpation where he exploits a corporate opportunity by establishing his own corporation to which he then diverts the opportunity, at least where the fiduciary owns and controls that other corporation.  Id.

Here, in the original Complaint, Plaintiff alleged a usurpation of NOG's corporate opportunities by various officers and directors of Plains Energy and Voyager, Plains Energy's successor by merger with ante4, Inc.  Plaintiff's claims of usurpation did not,

however, focus on particular business opportunities of NOG that either Plains Energy or Voyager usurped, that is, the acquisition and development of specific energy-producing properties. Rather, Plaintiff premised his usurpation claims on the *creation itself* of the allegedly-competing corporations. (Doc. No. 1, ¶ 32, ¶ 42; Doc. No. 35, at 27, 28.)

This Court dismissed the Complaint because in our free enterprise economy, the mere existence of a competitor is not legally wrongful, assuming of course that the entities compete on a level playing field. United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982) ("Competition is favored in the law."). Moreover, a usurpation claim may not be premised on the mere creation of entities without also establishing that those entities then in fact usurped particular opportunities from the plaintiff corporation. Insofar as a plausible claim of usurpation requires that the alleged wrongdoer in fact usurped a business opportunity of another, the Court found Plaintiff's theory of liability "problematic from the start as it rests only on the allegation that the Officer Defendants created entities that at most could potentially usurp an opportunity belonging to NOG." (Doc. No. 44, at 10.) "And even if Plains Energy did in fact acquire energy-producing properties that were in NOG's line of business, the mere fact that one corporation rather than another succeeded in acquiring such a property, by itself, discloses nothing more than its success in the marketplace." (Id. at 10-11.)

In short, a usurpation claim requires some *wrongful* conduct by the alleged usurper. Miller, 222 N.W.2d at 81. And the mere fact that corporate officers or directors establish additional businesses similar to that of the corporation is not necessarily

wrongful.  Id. at 83.

In the Amended Complaint, the usurpation claim is now directed at three Officer Defendants, rather than four, with the primary focus on Sankovitz.  Furthermore, Plaintiff now appears to focus only on the period from April 18, 2008 until April 16, 2010, that is, the period between when Plains Energy was incorporated and when it became Voyager by merger.  (Doc. No. 46, ¶¶ 23, 34.)  During that time, "Sankovitz served as Plains Energy's Secretary and General Counsel," and "also served as NOG's General Counsel."  (Id.)

Finally, Plaintiff has replaced the general allegations that NOG's corporate opportunities were usurped by the mere creation of Plains Energy and Voyager with the allegation that the Officer Defendants usurped an opportunity of NOG by acquiring "'approximately 50,000 net acres in two separate prospect areas.'"  (Doc. No. 46, ¶ 27.)[5] It appears that the two areas are (1) the Tiger Ridge area, with respect to which Plains Energy had entered into a joint venture with Hancock Resources, and (2) the Heath Shale, with respect to which Plains Energy was acquiring acreage "both within and outside" of its joint venture with Hancock.  (Id. ¶¶ 28, 29.)  It also appears that Plains Energy was pursuing operations in the Bakken area of the Williston Basin.  (Id. ¶ 30.)  (See generally id. ¶ 33 (discussing four areas of property in which Voyager, soon after its creation out of

---

[5] Nevertheless, the Amended Complaint retains some of the allegations that this Court rejected earlier.  In fact, the Amended Complaint opens with the allegation that it seeks to remedy alleged wrongs "in connection with the *formation, capitalization*, and operation of Plains Energy.  (Doc. No. 46, ¶ 1 (emphasis added).)  And Count I asserts that the Officer Defendants engaged in such a usurpation by, in part, taking for themselves the "opportunity to invest in the equity of Plains Energy."  (Id. ¶¶ 57, 58.)

Plains Energy, was conducting energy exploration as of May 18, 2010).)

Plaintiff alleges that Sankovitz, as an officer of NOG, should have presented these opportunities to NOG, but rather, as the Secretary and General Counsel of Plains Energy, acquired the properties for Plains Energy.  (Id. ¶ 56.)[6]  He further alleges that Sankovitz usurped an opportunity of NOG by investing in the equity of Plains Energy rather than offering that opportunity to NOG.  (Id. ¶ 57.)

The Court first observes that, despite the Amended Complaint's specification of several particular properties that Plaintiff alleges were usurped, it is still far from clear that NOG and Plains Energy operated in the same line of business.  Although Plaintiff alleges as much, it appears that he defines that line too broadly as "the 'oil and natural gas exploration opportunities.'"  (Id. ¶ 37.)  As the Amended Complaint itself discloses, NOG sought to acquire and develop energy assets that exhibit economically producible hydrocarbons.  (Id. ¶ 14.)  But NOG's business appears rather focused:

"Our business focus is on the oil and gas industry in a *limited number of*

---

[6] In fact, Plaintiff alleges that "[a]s Plains Energy's Secretary and General Counsel, Sankovitz personally directed and approved" Plains Energy's acquisition of the property at issue.  (Doc. No. 46, ¶ 27.)  But the Court simply is not required to accept Plaintiff's argument that because "Sankovitz was one of only three Plains Energy officers, in addition to being its co-founder, Secretary and General Counsel, there can be no doubt that Sankovitz personally approved and directed the foregoing acquisitions."  (Doc. No. 62, at 13.)  Plaintiff contends that "what is 'implausible' is Defendants' inference that Sankovitz was *not* personally involved in Plains Energy's acquisitions."  (Doc. No. 62, at 37 (emphasis in original).)  But it is far from self-evident that the duties of General Counsel–presumably a legal position–or even a corporate Secretary, extend to finding and exploiting business opportunities, particularly where Plains Energy at that time had a CEO and a President plainly qualifying as officers.  (Doc. No. 1, ¶¶ 7, 10 (alleging that after Plains Energy was created, J. Reger then served as the CEO and a director, and W. Gilbertson served as President until it became Voyager).) .

> *properties*, initially in Montana and North Dakota.  Larger companies have the ability to manage their risk by diversification.  However, *we will lack diversification, in terms of both the nature and geographic scope* of our business."

(Id. ¶ 18 (quoting NOG's Form 10-K filed on March16, 2009) (emphases added).)

> In contrast to NOG, Plains Energy focused on
>
> leaseholds unable to meet their drilling commitments and willing to assign their interests in acreage that is either subject to drilling or soon to be drilled.  By taking advantage of distressed situations, we believe we will be able to immediately provide working interest capital by assuming existing leasehold interests.

(Id. ¶ 30.)  Plains Energy thus sought to commit "capital to known drilling situations" such that it could achieve "a quick turn on capital."  (Id.)  In short, it is not clear that the properties Plains Energy acquired, and that Plaintiff claims were usurped, would have been the type of properties in which NOG would have been interested.

In any event, even assuming that NOG and Plains Energy operate in the same line business in the same geographic area, there remains a fundamental problem with Plaintiff's allegations–there is nothing alleged, or that may even be inferred from the allegations, that is wrongful.  At bottom, the Amended Complaint reduces to the following allegations:  (1) NOG was in the business of energy exploration in a particular area, as was Plains Energy; (2) Plains Energy succeeded in acquiring certain energy-producing properties; (3) Sankovitz was an "officer" of both entities at the relevant time; and (4) Sankovitz acquired the properties on behalf of Plains Energy, rather than on

behalf of NOG.[7]

This argument, without any allegations of actual wrongdoing, does not plausibly plead a claim for usurpation of NOG's corporate opportunity. As this Court previously observed, our economic and legal system favor free enterprise and competition. NOG and Plains Energy were free to compete in the acquisition of energy-producing properties within the geographic areas at issue. Plaintiff does not–and presumably could not rationally–allege that NOG somehow was entitled to a monopoly, or even a right of first refusal, on all such properties within that area, regardless of whatever other energy exploration companies also sought to operate in that area. And the simple fact that an officer or director of NOG was also an officer or director of Plains Energy does not, by itself, restrict that freedom. "As a general rule, corporate officers and directors, so long as they act in good faith toward their company and its associates, are not precluded from engaging in a business similar to that carried on by their corporation, either on their own

---

[7] Although Plaintiff argues that Sankovitz, in his role as NOG's General Counsel, was an "officer" of NOG and thus owed NOG certain fiduciary duties, any such allegation must be discounted as a legal conclusion. Moreover, at oral argument, counsel for Plaintiff stated that NOG's proxy statement for 2009 identified Sankovitz as an "officer" of NOG. Although counsel also stated that he would provide the Court with an affidavit attesting to that assertion and attach a copy of that proxy statement, no such submission was ever filed. One of the documents submitted by the Northern Oil Defendants is a NOG Proxy Statement identifying Sankovitz as one of the "Directors and Executive Officers" having beneficial ownership of NOG common stock, but as of "April 1, 2011." (Doc. No. 54, Ex. 5 (misidentified as Ex. 4 in the Affidavit).) By that time, however, it is undisputed that Sankovitz was serving as NOG's Chief Operating Officer, not just its General Counsel. Moreover, under Minnesota law, under which NOG is incorporated, there is no mandatory corporate officer position of General Counsel, nor any provision that General Counsel is one of the permissible "other officers." Minn. Stat. §§ 302A.301 (requiring only officers that perform the functions of "chief executive officer and chief financial officer"), .311 (permitting "other officers").

behalf or for another corporation of which they are likewise directors or officers."  3 William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 856 (2010 rev. vol.); accord Miller v. Miller, 222 N.W.2d 71 (Minn. 1974).

Although simultaneous service for two corporations in similar lines of business might expose such an officer or director to liability under certain circumstances, here the Amended Complaint is devoid of *any* facts supporting a claim that the acquisition of any particular property by Plains Energy was wrongful and to the detriment of NOG.[8]  There are no allegations even hinting at any actionable wrong, for example, either (1) that Sankowitz improperly used NOG's funds or other assets in acquiring the land for Plains Energy; (2) that Sankowitz misappropriated confidential NOG information in order to acquire the land, Diedrick v. Helm, 14 N.W.2d 913, 920 (Minn. 1944) ("The fact that an officer or director, through his connection with the corporation, gained knowledge of a noncorporate opportunity does not bar him from acquiring it individually."); or (3) that NOG's other officers and directors were in fact ignorant of Sankovitz's activities on behalf of Plains Energy.

In Miller, the Minnesota Supreme Court, after surveying the "three variant but often overlapping tests or standards" for a claim of usurpation of a corporate opportunity,

---

[8]  Plaintiff alleges that as a result of the usurpation, "NOG has been deprived of development and acreage opportunities . . . and has been deprived of the opportunity to invest in Plains Energy." (Doc. No. 46, ¶ 59.)  The Prayer for Relief seeks "damages sustained" as a result of Defendants' misconduct. (Id. at 19.)  But the Amended Complaint does not articulate any particular damages that NOG allegedly suffered by not being presented with the alleged corporate opportunities with respect to Plains Energy's acquisition of the properties at issue.

adopted an approach that "combine[d] the 'line of business' test with the 'fairness' test" so as to create a "two-step process for determining the ultimate question of when liability for a wrongful appropriation of a corporate opportunity should be imposed." 222 N.W.2d 71, 79, 81 (Minn. 1974).[9] The threshold question is whether the business opportunity at issue is "also a 'corporate' opportunity," that is, "whether the business opportunity is of sufficient importance and is so closely related to the existing or prospective activity of the corporation as to warrant judicial sanctions against its personal acquisition by a managing officer or director of the corporation." Id. at 81.[10] As discussed above, there are insufficient facts pled to support the claim that NOG, with its focus on "a *limited number of properties*," such that it would "*lack diversification, in terms of both the nature and geographic scope*," would have viewed the acquisitions by Plains Energy as a "corporate opportunity" of NOG where Plains Energy was focused on "distressed situations," that is, "leaseholds unable to meet their drilling commitments and willing to assign their interests in acreage that is either subject to drilling or soon to be drilled." And as also discussed above, there are no facts pled to support the claim that Sankovitz, then serving as NOG's "General Counsel," would be a "managing officer or director" of NOG so as to owe it

---

[9] The court found that the third major test–the "'interest or expectancy' test, which precludes acquisition by corporate officers of the property of a business opportunity in which the corporation has a 'beachhead' in the sense of a legal or equitable interest or expectancy growing out of a preexisting right or relationship"–was too restrictive. Id. at 79, 80.

[10] Where the court determines as a matter of law that the business opportunity was not a corporate opportunity, it need not proceed to the second prong of the Miller test. NeoNetworks, Inc. v. Cree, 2008 WL 2104161, *5 (Minn. App. May 20, 2008).

various fiduciary duties.

But even if the allegations of the Amended Complaint could be deemed to have satisfied the applicable pleading standard with respect to this threshold inquiry, those allegations would also have to satisfy that standard with respect to "the second step," which "involves close scrutiny of the equitable considerations existing prior to, at the time of, and following the officer's acquisition." Id.

> Significant factors which should be considered are the nature of the officer's relationship of the management and control of the corporation; whether the opportunity was presented to him in his official or individual capacity; his prior disclosure of the opportunity to the board of directors or shareholder and their response; whether or not he used or exploited corporation facilities, assets, or personnel in acquiring the opportunity; whether his acquisition harmed or benefitted the corporation; and all other facts and circumstances bearing on the officer's good faith and whether he exercised the diligence, devotion, care, and fairness toward the corporation which ordinarily prudent men would exercise under similar circumstances in like positions.

Id. at 81-82.

Plaintiff emphasizes that these inquiries are ordinarily fact issues, such that the Court should not presently resolve factual disputes. (Doc. No. 62, at 33.) Such factors do generally present fact issues. See Miller, 222 N.W.2d at 81-82. But the issue here, unlike that on a motion for summary judgment, is not whether there is any "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The issue is whether Plaintiff has alleged sufficient facts, which if taken as true, support a plausible claim; that is, whether the Amended Complaint shows an unlawful usurpation. Plaintiff also argues that he need not prove his claims at the pleading stage, but only allege facts showing his claims are

16

facially plausible. (Doc. No. 62, at 34.) True enough, but as will be seen, he plainly has not made that showing.

Here, the Amended Complaint pleads no facts relevant to these equitable factors. As noted above, the Amended Complaint essentially alleges only that Sankovitz, while serving as NOG's General Counsel, acquired energy-producing properties for Plains Energy, for which he was also serving as Secretary and General Counsel. As in Twombly, this does "not plausibly suggest [a wrongful acquisition] because it [is] not only compatible with, but indeed [is] more likely explained by, lawful unchoreographed free-market behavior." Iqbal, 556 U.S. at 680 (discussing Twombly).

Plaintiff relies on the standards for usurpation first articulated in Diedrick v. Helm, 14 N.W.2d 913 (Minn. 1944), and later applied in Miller. (Doc. No. 62, at 33-36.) But as both of those cases demonstrated, not every opportunity exploited by one company was thereby usurped simply because an officer of that company also served as an officer or director of another company that alleges the opportunity was properly its own. In Diedrick, the court examined at some length all of the situations where an officer or director would *not* be liable for usurpation even though he exploited a business opportunity alleged to have been a corporate opportunity. 14 N.W.2d at 919-20 (concluding officers were not liable for usurpation). Likewise, as discussed at length in this Court's earlier decision, in Miller, the court also found no liability for usurpation even though there was extensive familial connections between the various similar businesses. In short, the simple fact that an officer or director of a corporation engages in

17

actions, for his own personal benefit or that of another corporation, similar to those undertaken by the corporation, is by itself no basis for liability for usurpation. And here, that is all that Plaintiff has alleged.

The Amended Complaint focuses on Sankovitz's service for both corporations at the same time. There are no allegations, however, that NOG required its officers and directors to not also serve for other companies in the same business, or even that NOG somehow was not aware of Sankovitz's position with Plains Energy between April 2008 and April 2010.[11] It is also difficult to accept as plausible the allegation that, during that period, Sankovitz was usurping NOG's opportunities for Plains Energy, only to have NOG then appoint Sankovitz as NOG's Chief Operating Officer in March 2010. (Doc. No. 46, ¶ 8.)[12]

## III. CONCLUSION

Plaintiff's Amended Complaint fails to allege sufficient facts to support a plausible claim of usurpation of corporate opportunities, and thus the claim for aiding and abetting such usurpation also fails. Accordingly, this action will now be dismissed.

---

[11] And given the various relationships, business and familial, between many of the individual officers and directors at issue, it is difficult to assume that NOG was ignorant of Plains Energy, its business, and its officers and directors.

[12] As noted above, in light of this Court's conclusion that Plaintiff has failed to plead a plausible claim of usurpation of any NOG corporate opportunity, this Court need not address the other issues raised by the parties, including whether demand on NOG's board was properly excused so as to permit this derivative shareholder action.

## IV. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Northern Oil Defendants' motion to dismiss [Doc. No. 52] is **GRANTED**;

2. Voyager's motion to dismiss [Doc. No. 49] is **GRANTED**; and

3. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   May 7, 2012  	  s/ Susan Richard Nelson  
	SUSAN RICHARD NELSON  
	United States District Judge